MARY FRANKLIN HOME FOR AGED WOMEN et al., Appellants, v. STEPHEN S. EDSON et al., Appellees.

CHARITIES: Cy Pres (?) or Reversion (?)   Title to charitable trust property does not, *in the absence of some provision for reversion in the articles of trust,* revert to the donor or to his estate or to his heirs, in the event that the trust cannot, on account of insufficiency of funds, be carried out in the precise manner or on the elaborate scale contemplated or provided by the donor. A court of equity will (1) quiet title against any such hostile claims of reversion, and (2) see to it that the dominant purpose of the trust is carried out as nearly as possible in accordance with the original trust requirements.

*Appeal from Guthrie District Court.*—J. H. APPLEGATE, Judge.

APRIL 4, 1922.

THE opinion sufficiently states the case.—*Reversed and remanded.*

*W. D. Milligan,* for appellants.

*Batschelet & Vincent* and *C. E. Berry,* for appellees.

WEAVER, J.—This action was brought in equity, to quiet the title to real estate in the board of managers of a certain charitable institution known as the Mary Franklin Home for Aged Women. The facts material for the disposition of the case are not the subject of any substantial dispute, and are as

follows: In the year 1901, Alura M. Franklin, a resident of Guthrie County, Iowa, died testate, and her will has been duly probated. The seventh paragraph of that instrument reads as follows:

''It is my will that the executor hereof sell at public auction for cash to the highest and best bidder in parcel or in bulk, whichever he shall deem best, the following lands, to wit [here follows description of certain lands of which the testator died seized] and that the proceeds thereof be used for the sole purpose of purchasing a small tract of land in the town of Guthrie Center, Iowa, or, adjacent thereto, and erecting thereon a suitable building to be used only as a charitable home for aged women and any surplus that shall remain to be used as an endowment fund for said institution, which shall be named the Mary Franklin Home. It is my further will that three persons shall be appointed as trustees thereof, to be known as the board of managers, by the district court of Iowa, in and for Guthrie County, one of which shall be a member of the M. E. church, one of the Presbyterian church, and one of the Baptist church of the said town, and that said trustees shall have power to locate said institution, purchase said land, in the name of Guthrie County for the use of said institution, erect said building, invest, or place to the best advantage said endowment fund, and to manage, and control said institution, and if any vacancy occur on said board, it shall be filled by the church of which the person vacating was a member. The power of substitution or removal for cause of any member of the said board shall be vested in the respective churches as to their representative on said board. This bequest is made with the hope and desire that other charitable persons will aid in creating a suitable endowment for said institution that it may be a blessing to society, and especially to the aged women of Guthrie County, who need assistance, regardless of denomination; the churches herein authorized to maintain said board of managers, are named only as a means of perpetuating said institution and board, and interesting many people in the same.''

The land so devised was duly sold and converted into money, and the trustees named pursuant to the foregoing devise did purchase therewith a suitable lot as a site for the Home,

and erected thereon a building for the purpose designated in said trust, and from that time down to the beginning of this action, various aged women had been admitted to and maintained in said Home.   It appears, however, that the hope indulged in by the testatrix that the endowment fund would be enhanced by gifts from other charitably disposed persons was not realized, and that, after paying the expense incurred in the purchase of a lot and construction of the building, the remainder of the proceeds of the sale of the devised lands was not sufficient to constitute an adequate permanent endowment for the support and maintenance of the Home.   The result of these conditions was that the "surplus" of which the testatrix speaks in her will was gradually exhausted.   The title to the lot selected as a site for the Home was taken in the name of Guthrie County. In 1919, the board of managers, with whom were united as plaintiffs all the remaining inmates of the Home, three in number, filed a petition in the district court of Guthrie County for a decree authorizing the sale of the Home property.   To that proceeding the county was made defendant, but made no defense.   Upon the hearing to the court, a decree was entered, reciting the creation of the trust and the building and maintenance of the Home; that the endowment fund was practically exhausted; that there were no other available means for the maintenance of the charity, and that the trust would entirely fail, if relief were not granted: and it was therefore ordered and adjudged that the managers be authorized to sell the property of the Home.   For the preservation and proper use of the proceeds of such sale, the decree then made provision, as follows:

"The managers shall then use whatever funds remain on hand, to support, board, provide, and care for any aged women of Guthrie County, Iowa, who are or may become proper objects of charity, including said inmates, as may be just, right, and charitable, and as may be right and proper, subject at all times to the control of this court, on proper application of anyone interested in the proper and just use of said funds thus charitably provided, when not thus loaned or invested by said board of managers.   Said board of managers of said Mary Franklin Home are hereby ordered, directed, authorized, and empowered to make, execute, and deliver any and all necessary

contracts, deed, or bills of sale, or whatsoever instruments may be necessary to sell, assign, convey, or transfer any of said real or personal property to any purchaser accepted by them pursuant to this decree, and to thus vest fully in any such purchaser or purchasers thereof the full fee simple, or legal title thereto, fully divested of said trust and title now held by defendant, and to receive and receipt for all proceeds thereof.''

No appeal appears to have been taken from this decree, and it stands for whatever it may be worth, uncanceled and unchallenged of record. Later, the managers appear to have thought it advisable to quiet the title to the property against any possible claim of right or interest therein by the heirs at law of Alura M. Franklin, and brought this action against them for that purpose. The petition, after alleging title in the Home and in the managers for its use and benefit, prays a decree quieting the same in them, and barring and estopping defendants from having or claiming any interest therein. To this action the defendants appeared, and filed a general demurrer to the petition, on the ground that it does not state facts entitling plaintiffs to the relief demanded. The demurrer was sustained, and, plaintiffs electing to stand upon their petition without further pleading, appeal from said ruling was taken. In sustaining the demurrer, the court expressly withholds any finding or adjudication upon the right or interest of the defendants in the property, and limits its consideration to the inquiry into the plaintiffs' title. The views of the court are embodied in an opinion evincing much study, and this opinion is principally devoted to a discussion of the question whether, assuming the fact that this charity has failed, or is about to fail, for want of endowment and lack of support, the managers or the court, under an application of the so-called cy-pres rule, or other legal or equitable principle, may convert the *corpus* of the trust into money, and apply it, as far as it will go, to the promotion of charitable relief of like nature with that which the creator of the trust sought to promote by her gift.

I. The case presented by the petition demurred to and the ruling to which exception is taken, suggest the inquiry whether the subject to which the appellees' argument and the opinion of the trial court are chiefly devoted is at all relevant

to the appellants' demand for the quieting of their title. Stripped of all superfluous matter, the petition alleges plaintiffs' title to the property, and asks to have the same quieted in them as against the defendants, who are the heirs at law of Alura M. Franklin. The defendants deny nothing alleged in the petition, but by demurrer admit the truth of all its material allegations of fact. This admission includes the fact that Alura M. Franklin died seized of the described land; that she left a valid will; that she provided for the sale of this land and the erection thereon of the Mary Franklin Home for Aged Women, and provided that the excess of moneys so realized, after purchasing the site and erecting the building, should constitute an endowment fund for the support of such charity; and that the trust property has ever since been in the possession and control of the board of managers of said trust. The will provides for no remainder to the defendants or to any of them, nor for any reversion to the testatrix or her heirs. The terms of the will having been complied with, the land converted into money, and the money invested in the Home, as directed by the will, the property so devised ceased to be any part of the estate of the testatrix. It was not intestate property, and her heirs acquired no interest therein by descent. They are strangers to the title as completely as if the testatrix, instead of creating the trust by will, had in her lifetime, by good and sufficient deed, dedicated it without reservation to some lawful charitable use. *Sanderson v. White,* 18 Pick. (Mass.) 328. In its opinion, the trial court carefully avoids any confirmation or recognition of right or title in the defendants, but states as the reason for sustaining their demurrer that plaintiffs are asking "to have the title quieted in them as against the heirs of Alura M. Franklin, not with the idea of maintaining the institution as a home for aged women of Guthrie County, but with the idea that plaintiffs may thereby be able to sell the same to someone else, to be used for purposes other than that for which it was bought and constructed, and for which it has heretofore been maintained, under the will of Alura M. Franklin, but for the purpose of using the proceeds in the care and support of aged women of Guthrie County elsewhere than in said institution, so long as such proceeds will last for such purpose." But does this afford any valid reason for

refusing to quiet the title to the property in the Home or its managers or its trustee, as against the heirs of the testatrix who created the trust? Has the court any right or authority in this proceeding to refuse the decree quieting plaintiffs' title, simply because of an assumed or admitted ulterior purpose on their part to sell the property? Whether they do or do not so propose has no bearing whatever upon the inquiry whether they are or are not entitled to the decree for which they ask. The defendants' demurrer admits the title pleaded in the petition. That title, whether it be called a fee or a trust, plaintiffs ask to have protected against the hostile claims of the defendants. That defendants do assert such hostile claims is demonstrated by their appearance to this action, and their resistance to the plaintiffs' demand for a quieting decree. Such decree, if granted, is a matter of material importance, as giving added stability and certainty to the title to the property of the Home, even if no sale is ever made. In our opinion, the demurrer to the petition should have been overruled.

II.   It is argued by counsel for appellees as decisive of this case that the plaintiffs have no power or authority to sell the property of the Home; that they have improperly expended the endowment fund, and have demonstrated that the trust or plan upon which the charity was founded is impossible of fulfillment: and because of these alleged conditions, they assert, inferentially at least, that the heirs of the testatrix have acquired, by some sort of reverter, a right to set up title in themselves to the unexpended remainder of the trust estate. It should not be overlooked that, so far as the record shows, the managers have not sold the property, and the court *in this proceeding* has no authority to order or to forbid such sale. As we have already pointed out, the will does not provide for a remainder or reversion in the trust property. While it does provide for the purchase of a site and construction of a building for the Home, it makes no provision against changes in such property, or in its government, management, or control, as the changing conditions of the future might render wise or expedient. The testatrix may be presumed to have known that a charitable trust is favored by the law, and that the courts will not permit it to fail for want of proper oversight, and will authorize such

changes in its plan as are necessary to its preservation and efficiency, always keeping in view the evident purpose of the donor, and giving it effect literally if possible, or if not possible, then as nearly as may be. This subject we have recently considered in *Hodge v. Wellman,* 191 Iowa 877, and we will not repeat the discussion there found. See, also, *Lupton v. Leander Clark College,* 187 N. W. 496. If, then, it be true, as counsel argue, that it is impossible to carry out the trust upon the scale or plan indicated in the will, it by no means follows that, in the absence of any reservation or condition or right of reversion, the *corpus* of the trust descends to the heirs of the testatrix. The language of Chief Justice Shaw in *Sanderson v. White,* supra, is quite in point. After noting that, in ordinary cases, where a resulting trust in favor of heirs may sometimes be upheld he adds:

"But in case of a gift to charitable uses, this will never be done. In all such cases, the legacy will be sustained; and where a literal execution may become impracticable or inexpedient, in part or even in whole, it will be carried into effect so as to accomplish the general purpose of the donor, as nearly as circumstances will permit, and as such general charitable intent can be ascertained. From this view of the law governing gifts in trust to charitable uses, it is manifest that no neglect, misapplication of funds, or other breach of trust, will give a right to the heirs at law to call upon a court of equity to declare a resulting trust for themselves; and, of course, they have no pecuniary or beneficial interest accruing from the nonexecution of such a trust."

In *Brice v. Trustees,* 31 R. I. 183, 197 (76 Atl. 774, 780), the Rhode Island court, discussing a somewhat similar situation, says:

"Indeed, the cases seem to rest upon the idea—somewhat like that which obtains in cy-pres applications of charity estates—that, the primary purpose of the donor being the promotion of the charity, his incidental purpose that the particular property given shall be used for its promotion may be disregarded, and the property sold or exchanged, if thereby the charity will be greatly benefited. * * * The correct doctrine is, we suppose,

that the trustees have the power, when the interest of the charity manifestly requires, to alienate the charity estate.''

In the same case, it is further said:

''It is suggested that these complainants may have some standing by right of reverter for a breach of the trust. To this it is enough to say that, although lands may revert to an owner or his heirs by reason of a breach of a condition, no such result flows from the violation of a trust.''

In Pennsylvania, the rule is stated as follows:

''Where an absolute estate in land is given, to be used for certain purposes, and conditions have so changed as to require a change of location, or *even a conversion of the property into cash,* to be applied for the purposes and in furtherance of the object of the donor, a sale may be ordered. Such sale is not a diversion of the property, but merely dealing with it in such manner as to more effectually carry out the wishes of the grantor.'' *Appeal of Custer,* (Pa.) 95 Atl. 89; *Burton's Appeal,* 57 Pa. 213. See, also, *Amory v. Attorney General,* 179 Mass. 89 (60 N. E. 391); *Weeks v. Hobson,* 150 Mass. 377 (23 N. E. 215); *Adams Female Academy v. Adams,* 65 N. H. 225 (18 Atl. 777); 5 Ruling Case Law 368.

Quite in point, in principle and in fact, are *Norris v. Loomis,* 215 Mass. 344 (102 N. E. 419); *Richardson v. Mullery,* 200 Mass. 247 (86 N. E. 319); and *Ely v. Attorney General,* 202 Mass. 545 (89 N. E. 166).

To avoid the application of this principle to the case at bar, it is said that the will evidences a general or dominant purpose of the testatrix to provide and maintain the Home, and that this mode of administering the charity is an essential condition to the existence of the trust. We do not so read or understand the will. It clearly reveals the desire or purpose of the testatrix to provide a gift for the benefit and relief of aged women. The erection and maintenance of a suitable building were simply means to that charitable end. It cannot be thought that the donor contemplated the perpetual maintenance of a building which for any reason ceases to be available for its intended purpose. It is by no means an unusual thing to find that a gift or devise in trust for a charitable use is inadequate to secure the successful accomplishment of the generous purpose

of the donor; but the trust does not for that reason fail; nor, in the absence of some provision for a reverter, or of some condition precedent or subsequent attached to the gift by the donor himself, does it open the door to his heirs to lay claim to the trust property.    In *Norris v. Loomis,* supra, the testatrix devised her residence for an "Old Folks' Home," and gave other property for its support.    It was shown that the building was not suitable for that purpose, and that the provision for the support of the Home was inadequate.    There, as here, the heirs denied the validity of the trust, but the court overruled their contention, saying:

"The will is informal, but on the whole, we are inclined to think it manifests a general charitable intent as to the founding of the Old Folks' Home, and that it is not so limited to the particular building or place as to disclose an intention that it be devoted to no other purpose. * * * The dominating design disclosed by the will is the establishment of the Old Folks' Home. The appropriation of the Arlington House to that use is rather the incidental than the primary aim. * * * The precise method of accomplishing the charitable purpose was not of the essence of the gift, nor so important in her thought as the general relief of the dependent class uppermost in her mind."

Precedents to the same general effect are numerous.    They have been considered by us in *Hodge v. Wellman,* supra, and in *Phillips v. Harrow,* 93 Iowa 92, where we approve and apply the principle declared in the leading case, *Jackson v. Phillips,* 14 Allen (Mass.) 539, to the effect that when, "by change of circumstances, the scheme of the testator becomes impracticable, or by change of law becomes illegal, the fund, having once vested in the charity, does not go to the heirs at law as a resulting trust, but is to be applied by the court of chancery, in the exercise of its jurisdiction in equity, as near the testator's particular directions as possible, to carry out his general charitable intent."

We are satisfied to abide by these authorities, and we think they are controlling · upon the propositions urged by the appellees.

We do not discuss the effect to be given to the prior order of the trial court authorizing the sale of the property and direct-

ing the manner of using the proceeds therefrom. It does not appear to have been given any consideration by the trial court in this case, nor is its validity challenged by counsel for the appellees in this court.

For the reasons stated, we hold that the demurrer to the petition should have been overruled. The ruling and judgment appealed from are, therefore, reversed, and cause remanded for further proceedings in harmony with the opinion.—*Reversed and remanded.*

STEVENS, C. J., PRESTON and DE GRAFF, JJ., concur.