IN RE ESTATE OF HENRY J. NUGEN.

No. 43777.

APRIL 6, 1937.

F. S. Finley and George Van Allen, for heirs.

Clifford M. Vance, for executors.

McCoid, McCoid & McCoid, for town of New London.

HAMILTON, J.—Henry J. Nugen executed his last will and testament on October 4, 1934. On January 4, 1935, he departed this life. On May 8, 1935, his will was duly admitted to probate. No question is raised in this court as to the construction or validity of any of the provisions of the will except paragraph 11 which is in words and figures as follows:

"Item XI. I further will, devise and bequeath all the rest, residue and remainder of my estate not herein disposed of, including all my land, and personal property of whatever nature and kind including my stocks, bonds and securities and investments of all kinds for the following purpose and to be used as follows:

"I hereby empower my Executors hereinafter named to spend a sum not exceeding Ten Thousand Dollars ($10,000.00) for the purchase of a suitable building and equipment in the

Town of New London, Iowa, to be used for the purpose of a free public Library in said town, and said building and equipment to be donated to the Town of New London, Iowa, on condition that said town accepts the same and agrees to furnish all light, heat, clerical help and pay all operating expenses of said library and keep said building in repair after the purchase of said building and equipment by my executors, all the rest, residue and remainder of my estate is to be kept in trust and the income therefrom be used for the purpose of buying books and reading material for said library but the principal of the remainder of my estate is not to be used for any purpose. Any securities, stocks or bonds coming due or if payment is received by my executors, then the same is to be reinvested in securities of the same kind approved by the Court, and the income used for the purchase of books and reading material for said Library in the future. The Town of New London, Iowa, is to keep up insurance on all books, building and equipment and against loss by fire, wind, tornado or theft. The name of said Library is to be the 'H. J. Nugen Public Library,' and all books to contain this stamp. All taxes, repairs, expenses and insurance on any of my land or on any of my personal property are to be paid before any income is paid over for the purpose of said library, it being my intention that the net income only of my property be used for library purposes. For the purpose of carrying out my wishes and plans for said library there shall be a library board consisting of five members, all of whom shall—women and Mrs. C. D. Rawhauser, Mrs. Albert Jericho and Miss Clara Kongable all of New London, Iowa, shall be three of the members and they shall select two more members to serve with them. All vacancies occurring in the board shall be filled by the board and said board shall oversee the purchase of books and management of the library, but the management of the property in my estate and of all securities and investments shall be under the supervision of the District Court of Henry County, Iowa, at all times to carry out the provisions of this instrument. All members of the Library board shall act without compensation, and Mrs. Rawhauser chairman for the first year.''

In their written objections, the heirs, who were designated as claimants, aver that that portion of the will wherein it purports to convey certain property to the town of New London for

library purposes as found in paragraph eleven, is invalid for the reasons (a) that it requires the town to do an unlawful act and one which cannot be done under any provisions of law in the State of Iowa; (b) that under the laws of Iowa the town would have no power to levy assessment on any property for library purposes, except the library would be owned, operated, and controlled by a board of directors appointed by the mayor of said town and owned and operated by said town; (c) that the condition provided for in said will, wherein it requires the town "to furnish all light, heat, clerical help and share all operating expenses of said library and keep said library and equipment in repair" when the same is operated and controlled by a board constituted by the terms of the will instead of by the mayor of the town, would be an unlawful act on the part of said town, and one not justified under the statutes of this state; and (d) that the town of New London has not authorized the town council to accept this provision of said will, and the town has not accepted the same, and because of the foregoing they demand their legal rights to the interest in said estate.

By way of answer to the pleadings of said objectors or claimants, and to the petition or application of the executors, the town of New London states that none of the claimants are the surviving spouse, child or children, child of a deceased child, or parent of the testator, and that he left no surviving spouse, and no child or child of a deceased child, or parent surviving him; that Item XI of said will is valid, and that the town has the capacity and power to take property in trust for educational purposes, including the maintenance of a public library, with the obligations and limitations imposed by the donor, and that the conditions attached to the gift contained in Item XI of said will are within the power and capacity of the town to provide and comply with; that same is a valid, charitable devise and bequest, and is in accordance with, and tends to promote the purposes of the creation of said town; that the town of New London, Iowa, is ready, able and willing to accept said devise and bequest, and said trust, and to meet the conditions of the same, both under the laws of the state of Iowa, and in fact, subject to the approval of the authorized voters of said town as required by law; and prays that the court so construe and interpret said will.

The case was submitted on a very brief stipulation, wherein is the following concession: "It is conceded that the evidence

now offered by the contestants would show that there has been no ordinance or resolution or vote of the people of New London accepting the provisions or rejecting them, to which testimony the town objects as incompetent, irrelevant and immaterial.'' On March 25, 1936, the cause having been heard and argued by counsel and fully considered by the court, a decree was entered wherein the court construed the provisions of paragraph eleven as follows: ''That the devise and bequest made in Item 11 of the last will and testament of Henry J. Nugen is a valid devise and bequest, and that the trust created thereby is a valid trust, and that the property therein devised and bequeathed shall be managed and controlled by the executors of the estate of Henry J. Nugen under the supervision of the District Court in and for Henry County, Iowa, for the purposes as set forth in said Item 11. That said devise and bequest is one which the said Henry J. Nugen had the authority and power to make, and one which the town of New London has the capacity and authority to accept and execute, and is in accordance with and tends to promote the purpose of the creation of the town of New London, Iowa, and is germane to the objects of said municipal corporation and is a charitable devise and bequest.'' The objections of the heirs were overruled and the heirs have appealed.

The assignments of error embrace the same propositions contained in the objections heretofore set out. More specifically stated, they are:

(1) The court erred in holding that the conditions (which appellants contend are ''conditions precedent'') had been met or complied with. This may be answered by the statement that the court made no such finding, and no one contends that the town at the time of the trial below had taken any steps toward formally accepting the bequest.

There is no time limit fixed in the bequest. We know of no statutory provision which limits acceptance within any specified period. The town, when called upon to respond to the application of the executors, set up in its answer that it was ready and able and willing to accept and comply with the conditions, subject to authorization by the vote of the people. This application for construction of the will was filed in the second month following the admission of the will to probate, and the matter has been in litigation ever since. Therefore, if it is a valid gift within the power of the testator to make, and the town to accept, it would

be a strange doctrine indeed that would require a court of equity under these circumstances to hold the gift invalid for failure of formal acceptance.

(2) It is next contended that the court erred in holding that paragraph eleven constituted a charitable gift to the town, for the reason that said paragraph was merely an offer of such a charitable bequest upon conditions, which conditions at the time of the trial below had not been accepted or agreed to, as required by the terms of the will; and further, that such offer and conditions were impossible of fulfillment and could not be accepted or complied with under the law. This brings us to the very heart or vital part of the whole legal controversy. Here is a man who is desirous of promoting the establishment of a free public library —a benevolent and charitable purpose— in the beautiful little town of New London, one of the many progressive, up-to-date, thriving, small municipalities for which the great state of Iowa is noted. He had no direct descendants. The exact degree of relationship, either by affinity or consanguinity, of the contesting heirs is not disclosed by the record. Suffice it to say that, with the exception of one or two of them, their names nowhere appear as beneficiaries in his will, and he seemed in no way concerned over their welfare. No claim was made that he was not competent, or that anyone influenced him in the disposition of his property. The contesting heirs are not contending that they had any claim to, or that they are the natural objects of, his bounty, but rest their case solely on their naked legal rights because of their relationship to the testator, asserting that the charitable purpose must fail, and by reason thereof, under the law, they become entitled to the property, which it is plainly evident the testator intended to be used for charitable purposes.

We have no intention of entering upon an extended discussion of the technical, finely drawn legal distinctions presented by the very able arguments of opposing counsel, deeming it unnecessary and unprofitable to do so, but shall content ourselves by stating a few general legal principles of construction applicable, and referring briefly to some of the cases cited and to our own statutory provisions relative to this matter, which in our judgment and opinion sustain the holding of the trial court.

''In passing on the questions thus raised, it will be well to keep in mind the suggestion of Gibson, C. J., in Bask v. Bask,

9 Pa. 260, that the courts have no more authority to make wills for the dead than contracts for the living, according to judicial notions of fitness and propriety, and also the statement of Ryan, C. J., in Dodge v. Williams, 46 Wis. 70 (1 N. W. 92, 50 N. W. 1103), that it is as much the duty of courts to uphold and enforce an individual's will after the death as to uphold and enforce his contracts made during life. So that, while courts of equity will look with favor on all charitable bequests, they will not ignore established principles of law in order to give them effect. Nevertheless, as said by Lord Harwicke, in speaking of such a bequest, 'there is no authority to construe it to be void, if by law it can possibly be made good.' '' Klumpert v. Vrieland, 142 Iowa 434, 436, 121 N. W. 34, 35.

In this same case we find the following statement:

''In carrying into effect a legacy to an individual, the mode is deemed to be of the substance of the legacy; but, when the legacy is to charity, the court considers the charity as the substance, and, if the mode prescribed shall fail, will provide another rather than allow the purpose to fail.''

''Conditions, which, in the case of an ordinary trust will be held to be conditions precedent, will in the case of a charitable trust, be held to be conditions subsequent.'' Zollman, American Law of Charities, section 642, page 443.

''A condition precedent is a condition upon the happening of which an estate will vest. A condition subsequent defeats an estate already vested. There are no technical words to distinguish between conditions precedent and conditions subsequent; whether they are one or the other depends on the intent of the person creating the condition. If the language of the particular clause, or of the whole will, shows that the act on which the estate depends must be performed before the estate can vest, the condition is precedent, and unless it can be performed the devisee can take nothing. * * * An act or condition required by a will which does not necessarily precede the vesting of the estate given, but may accompany or follow it, is to be deemed a condition subsequent and not precedent.'' 28 R. C. L., section 296, page 312. The same principle is announced in 69 C. J., section 1783, page 675.

'' 'Courts are averse to construing conditions to be precedent where they might defeat the vesting of estates under a will.'

\* \* \* And especially is this so in regard to residuary bequests." In re Stickney, 85 Md. 79, 36 A. 654, 656, 35 L. R. A. 693, 60 Am. St. Rep. 308.

"As the law favors the vesting of estates, the courts, in construing a will, prefer conditions subsequent to conditions precedent and, in a case of doubt as to the testator's intention, will construe a condition to be subsequent rather than precedent where it is possible to do so without violating some established rule." 69 C. J., section 1784, page 676.

"The presence or absence of a devise or limitation over on nonperformance respectively indicates that a condition is or is not precedent. Also, the presence or absence of a provision for forfeiture respectively indicates that a condition is or is not subsequent." 69 C. J., section 1785, page 676.

The same thought is expressed by our court in the case of Schrader v. Schrader, 158 Iowa 85, 89, 139 N. W. 160, 162, wherein we find the following pronouncement:

"As between contingent and vested estates, conditions precedent and conditions subsequent, forfeitable rights and nonforfeitable rights, the courts always incline to the latter whenever it can fairly be done without violence to the language of the instrument under which the claims of the parties are asserted. In no class of cases can this rule be more equitably applied than in the adjudication of rights dependent on the construction of wills. \* \* \* In Schouler on Wills, section 598, the author says: 'No criterion is afforded by the choice of technical expressions, but the probable intention of the testator must determine the construction in every case of the kind.' The fact that the will does not provide for a devise over to another on failure of the first-named devisee to perform the condition attached to the gift is by all authorities considered a circumstance of much weight, indicating that the condition is not precedent to the vesting of an estate." (Citing cases.)

"An indefinite time within which to perform is indicative that the condition is subsequent and not precedent." 28 R. C. L., section 296, page 312; Finlay v. King, 3 Pet. 346, 7 L. Ed. 701. See, also, Jackson v. Knapp, 297 Ill. 213, 130 N. E. 524; Hawkins v. Hansen, 92 Kan. 73, 139 Pac. 1022, L. R. A. 1915A, 90; 69 C. J., section 1786, page 676; Taylor v. Mason, 9 Wheat. 325, 6 L. Ed. 101; Winn v. Tabernacle Infirmary, 135 Ga. 380, 69

S. E. 557, 32 L. R. A. (N. S.) 512; Ellicott v. Ellicott, 90 Md. 321, 45 A. 183, 48 L. R. A. 58; Dunee v. Minsor, 312 Ill. 333, 143 N. E. 842.

Pertinent to this question is also the rule against partial intestacy. It will be noticed that in this will there is no devise over should the devisee fail to perform, which, if appellants' theory is sustained, would result in partial intestacy. "It is elementary that the intention of the testator is the only guide in the construction of all wills, and that, when the intention is clear from the language used, the courts may not seek further, but must enforce the will as written, if it may lawfully be done." Old Ladies Home of Muscatine v. Hoffman, 117 Iowa 716, 717, 89 N. W. 1066, 1067.

There can be no question, under the almost universal holdings of the courts, that a gift for the purpose of aiding in the establishment and support of a public library is a gift to charity. "Public libraries are recognized by the courts as the most valuable means of education, and devises for such purposes are upheld as charitable." 2 Page on Wills (2d Ed.) section 1971, page 1752.

"The word 'charity', as used in law, has a broader meaning and includes substantially any scheme or effort to better the condition of society or any considerable part thereof. It has been well said that any gift not inconsistent with existing laws, which is promotive of science or tends to the education, enlightening, benefit, or amelioration of the condition of mankind or the diffusion of useful knowledge, or is for the public convenience, is a charity." Wilson v. First National Bank, 164 Iowa 402, 412, 145 N. W. 948, 952, Ann. Cas. 1916D, 481. See, also, Phillips v. Harrow, 93 Iowa 92, 61 N. W. 434; Chapman v. Newell, 146 Iowa 415, 425, 125 N. W. 324, 328. In this last case, language very appropriate to and expressive of the situation confronting us in the instant case is found in the following statement: "He was under no legal obligation to provide for his collateral relatives, and, whatever he did with his estate, they were not wronged. His will has been duly probated. Its provisions are clear, and they must be effectuated unless the gift or devise to which objection is made is found contrary to some statute or settled principle of law. That a devise to promote public interests is valid is not open to dispute."

By the language of paragraph eleven, Henry J. Nugen most certainly created a charitable devise and bequest. He states:

"I further will, devise and bequeath all the rest, residue and remainder of my estate not herein disposed of, including all my land, and personal property of whatever nature and kind including my stocks, bonds, and securities and investments of all kinds for the following purpose and to be used as follows:" Then follows the purpose. His primary purpose was to bestow upon his home town a free public library and endow it, and pursuant to this intent and purpose, he placed his entire residuary estate definitely in trust for that purpose, giving his trustees or executors, under the supervision of the court, power and authority and general control over it. They were to expend $10,000 for the purpose of purchasing and equipping a building suitable for a free public library, and aside from paying taxes, repairs, expenses and insurance on the trust property, the net income derived from the balance of this residuary estate was all dedicated to the upkeep of this library. After purchasing and equipping the building the trustees were to donate it to the town of New London, Iowa, provided the town would accept it, and agree to furnish all light, heat, clerical help and pay all operating expenses of said library, and keep said building in repair. Aside from this $10,000 item and the items of taxes, repairs, expenses and insurance upon the trust property, the income from the remainder was to be used for buying books and reading material for said library, but the principal of the remainder of said estate was not to be used for any purpose. He then provided that for the purpose of carrying out his wishes and plans for said library, there should be a library board consisting of five members, all of whom should be women, and he named certain women and they were to select the others, and were to have power to fill vacancies. "Said board shall oversee the purchase of books and management of the library." But he specifically provides that the management of the property in the trust estate and of securities and investments thereof shall be under the supervision of the district court of Henry County, Iowa, to carry out the provisions of said will.

There is nothing in the purpose of this gift that contravenes the law of this state, or the public policy of the state. Appellants contend, however, that since the maintenance of a library can

only be by public taxation, and since the legislature may repeal the law authorizing cities and towns to levy tax for the support of a library, and since one council cannot bind its successor or successors, therefore, it is impossible for the town to bind itself to carry out the conditions of this trust. Furthermore, that since the statute provides for the mayor appointing the library board, the selection of the library board in the will is contrary to the statutory provisions, and that it would be illegal and unlawful to turn over to this testamentary board funds raised by taxation upon the individual property of the citizens of the town. There is no such conflict or inconsistency with the statutory provisions relating to the appointment of library boards and management of city libraries as to render the will invalid. It is contrary to the public policy of this state to indulge in strained construction of the provisions of this will in order to seek out and discover a basis for avoiding the primary purpose of the testator to bestow upon the town a charitable trust. We must assume that the testator prepared his will in the light of the statutory law of this state, and that wherein the details with reference to the administrative duties in the management and control of the library are in conflict with the statutory provisions, the statutory provisions will control, and in such inconsistencies or apparent inconsistencies in matters of mere detail of administration may not be found sufficient reason for holding the trust invalid.

Under the law of this state, ample provision has been made for a municipality to accept and carry out charitable gifts for library and other purposes. Section 5850 provides:

"Donations. They may receive, hold, and dispose of all gifts, donations, devises, and bequests that may be made to them for the purpose of establishing, increasing, or improving any library; and when the conditions thereof have been accepted by the city, their performance may be enforced by the library board by an action of mandamus against the council or by other proper action."

Chapter 445 of the Code relates to gifts to various organizations and section 10188 of said chapter relates to gifts to municipal corporations and provides:

"* * * towns * * * are authorized to take and hold property, real and personal, by gift and bequest; and to administer the

same through the proper officer in pursuance of the terms of the gift or bequest. No title shall pass unless accepted by the governing board of the corporation. * * * Conditions attached to such gifts or bequests become binding upon the corporation * * * upon acceptance thereof.''

Section 10190, et seq., relate to taxes voted to maintain, and provide for submitting the proposition to the legal voters. It is therefore clear that under our code of statutory laws, towns may receive gifts, devises and bequests for the benefit of free public libraries, and that upon adopting the proper legal procedure pointed out by the statute for accepting the gift in question, the statute specifically provides that the city is bound by the conditions and may be compelled by action in mandamus to carry out the purposes of the trust. It certainly is not to be assumed, in order to conjure up a legal impediment to the acceptance of this trust that all the present statutory laws and powers conferred thereby will be sometime in the future abrogated and the city thus left without any legal means of maintaining or carrying out their agreement in respect to maintaining the library. If the present power exists, that is all that is required. There is no intimation that the millage levy authorized would not be ample.

The amount of the estate involved in this trust fund is not shown by the record. That it includes farms, securities and other investments is implied from the language used. The building is to be furnished and equipped, the running expenses and upkeep will not be great. Insofar as buying books and magazines, etc., is concerned, the income will be available for that purpose. The board of women is to ''oversee the buying of books and management of the library.'' ''Oversee'' means ''to look over, to watch, to superintend.'' The idea undoubtedly in the mind of the testator was that these particular women named would be interested in, and competent to watch and oversee, this magnificent gift of a free public library, and to see that proper books were purchased and the management properly carried on. Not everyone is qualified for this task. He selected only three whom he undoubtedly knew to be women especially qualified, and said to them, ''you pick some more of the proper kind and character,'' and in this way he would always be assured of a group of good women of the town who had a special interest in and talent for overseeing a public library. This board is not given specific di-

440

rections and powers tantamount to those conferred by statute upon the library board of trustees; neither is it to be implied that they are to handle the money raised by taxation, unless they are appointed by the mayor of the town, in which case they would become not only the testamentary board of overseers, but also the statutory board of trustees. We do not find in the conditions contained in the will the essential elements that make it compulsory upon the court to find that they are conditions precedent to the vesting of the estate, and without such impelling elements the main object and purpose of the testator should be given effect.

We have read and given careful consideration to the propositions and authorities in the very splendid brief and argument of the appellants, but find nothing therein applicable to the facts in this case that interferes or goes contrary to our holding. The interpretation contended for by counsel for appellants is entirely too technical, and the basis thereof is too narrow to be applied in the interpretation of the provisions of a will creating a charitable trust. We prefer to adhere to the principle announced long ago by Lord Harwicke in speaking of such a bequest: "There is no authority to construe it to be void, if by law it can possibly be made good." Klumpert v. Vrieland, supra. Therefore, we are constrained to hold that the distinguished and able trial court was right in his analysis, construction and interpretation of the will. Accordingly, the decree entered below is affirmed.—Affirmed.

MITCHELL, PARSONS, SAGER, ANDERSON, DONEGAN, KINTZINGER, and STIGER, JJ., concur.