In the Matter of the ESTATE of Mary Groh STAAB, Deceased.

**CATHOLIC CHARITIES OF the DIOCESE OF SIOUX CITY, a corporation not for profit, Appellant,**

v

Mary Groh STAAB'S ESTATE, Appellee,

St. Monica's Home, Appellee,

Heirs At Law of Mary Groh Staab, Appellees,

Good Shepherd's Home, Appellee.

No. 53652.

Supreme Court of Iowa.

Jan. 13, 1970.

Gill, Dunkle, Beekley & McCormick, Sioux City, for appellant.

E. P. Murray, LeMars, for Estate of Mary Groh Staab, appellee.

Kindig, Beebe, McCluhan & Rawlings, Sioux City, for St. Monica's Home, appellee.

Orville Hames, Remsen, for Richard Staab, Milo Staab, Irvin Staab and Roman Staab, heirs at law, appellees.

Charles Knudson, Marcus, for Mary Lauters and Lucy Gertrude McLaughlin, heirs at law, appellees.

James McNally, LeMars, appointed as Guardian ad Litem for persons known or unknown, appellees.

Paul J. Yaneff, Sioux City, for The Good Shepherd's Home, appellee.

REES, Justice.

This is an action for a declaratory judgment under section 633.11, Code. Executors of estate of Mary Groh Staab, deceased, asked the Court for directions respecting the distribution of two shares of the residuary portion of the decedent's estate. From the decree of the trial court determining that a bequest of one-fourth share of the residue lapsed, the appellant appeals. We affirm.

Mary Groh Staab died testate October 4, 1967. Her will under scrutiny here was executed February 3, 1959. Our concern is with Item Nineteenth of the will, which provides:

"Nineteenth. All the rest, residue and remainder of my property of whatever kind or nature, I give, devise and bequeath unto St. Joseph's Roman Catholic Church, LeMars, Iowa, to be used in payment of church debt or such other purpose as the pastor in charge shall deem proper, St. Monica's Home, Sioux City, Iowa, St. Anthony's Orphanage, Sioux City, Iowa, and Good Shepherd's Home, Sioux City, Iowa, in equal shares, share and share alike."

St. Joseph's Roman Catholic Church of LeMars, Iowa and St. Anthony's Orphanage of Sioux City, Iowa, were in existence at testator's death, and still are, and still perform the functions for which they were organized and exist. St. Monica's Home of Sioux City, Iowa, an Iowa corporation with its principal place of business at Sioux City, was operated by the Sisters of St. Benedict as a home for unwed mothers and children under four years of age, for a period prior to the date of execution of testator's will and until September 1962 when it discontinued its operation for such purpose but retained its corporate identity under the same name and style and on September 16, 1963 commenced operation as a home for retired persons, or Old Folks' Home. It is still operated by the same religious order and the ownership of the physical plant remains unchanged.

Good Shepherd's Home of Sioux City, Iowa, was, at the date of testator's will, an Iowa body corporate with its principal place of business at Sioux City. At the time of the execution of the will it was an institution for the care of disturbed teenage girls who were not able to live in their own homes or could not properly adjust to society, operated by the Sisters of the Good Shepherd with headquarters or mother house in St. Paul, Minnesota. In mid-year 1963 the license for the operation of the home was surrendered and the building and grounds were sold to St. Joseph's Mercy Hospital, the building was razed and the grounds converted to a parking lot. Thus, Good Shepherd's Home ceased to exist for any purpose over four years prior to testator's death.

Information concerning the discontinuance of operation of Good Shepherd's Home for any purpose, and respecting the change of charitable purposes of St. Monica's Home from a home for unwed mothers and small children to an Old Folks' Home was widely publicized and disseminated throughout the Diocese of Sioux City comprised of approximately the northwest quarter of Iowa, and particularly to the two Catholic parishes in LeMars, the home of testator.

Appellant, Catholic Charities of the Diocese of Sioux City, a nonprofit Iowa corporation, is defined as a child care and child placing agency licensed by the State. At the time of trial appellant operated, or had under its jurisdiction St. Estelle's Home, a maternity home, St. Anthony's Home, a child care institution (one of the residuary beneficiaries named in Item Nineteenth of decedent's will), and St. Barbara's, known as Villa Maria, an institution for the care of teenage children.

In their application for a declaratory judgment, the executors of decedent's estate set out all of the foregoing facts, and further represented to the court that at the time of the execution of decedent's will, St. Monica's Home was operated for the care of unwed mothers and children under four years of age, and that its purposes had been diverted to the care of retired citizens, or as an Old Folks' Home. They further represented that since said home has no longer been operated for the purpose of caring for unwed mothers and small children, and in view of the fact that a new home, named Villa Maria, operated by the Catholic Sisters of St. Francis of Dubuque, Iowa, had been erected in Sioux City, and that one wing thereof, known as St. Estelle's, was operated for the care of unwed mothers and children under four years of age, it was the belief of the executors that it was the intention of the testator that the home which would receive the bequest would be a home operated for the care of unwed mothers and children under four years of age, and that it was the intention of testator that said bequest be paid to Villa Maria and not to St. Monica's Home. The executors further represented to the court in their petition for declaratory judgment that Good Shepherd's Home was no longer in existence, but that a wing of Villa Maria, known as St. Barbara's Wing, had been established, having for its purpose the care of disturbed teenage girls, the same function which had been performed by Good Shepherd's Home while it was in existence. Executors represented to the court it was their belief it was the intention of the testator that the bequest provided for in Item Nineteenth of her will for Good Shepherd's Home should be given to a Catholic home in Sioux City operated for the purpose as Good Shepherd's Home had been operated prior to its dissolution, and further represented to the court that in the event the trial court should determine that Good Shepherd's Home was not in existence and should determine that the bequest was not payable to Villa Maria, that the court should construe the will and determine whether or not the bequest to Good Shepherd's Home, as well as the bequest to St. Monica's Home, should be paid to other residuary legatees named in Item Nineteenth of decedent's will, namely, St. Joseph's Church and St. Anthony's Orphanage.

Answer of appellant Catholic Charities set out all of the foregoing pertinent facts and claimed the residuary bequests made by the decedent in Item Nineteenth of her will to Good Shepherd's Home and to St. Monica's Home should be made payable to Catholic Charities of the Diocese of Sioux City, or on behalf of Villa Maria, which was then performing the services which had been performed prior by the institutions named.

The trial court in its order and declaratory judgment directed the payment of the portion of the residuary estate devised to St. Monica's Home be paid to said home, and ordered and adjudged that the one-fourth share of the residuary estate which was devised to Good Shepherd's Home should lapse, finding there was no express provision in the will of the testator, or any justifiable construction which might be placed on said will, giving the residuary interest of Good Shepherd's Home to the other residuary legatees named in Item Nineteenth, and ordering the one-fourth interest devised to Good Shepherd's Home should be disposed of as intestate property and pass to the heirs at law of Mary Groh Staab, deceased. The court further found and adjudged there was no express provision in the will of testator, or any justifiable construction which might be placed thereon, requiring that St. Monica's Home be operated for the same purpose as it was operated at the time of the execution of decedent's will, and that St. Monica's Home serving its present purpose qualifies as a devisee.

Appellant relies for reversal upon five propositions: (1) The court erred in finding there was no possible construction which might be placed on the will that

would entitle Catholic Charities to the residuary devise given in said will to Good Shepherd's Home. (2) The court erred in failing to find a general charitable intent in the will of testator, and in failing to apply the doctrine of cy pres thereto. (3) The court erred in declaring the residuary devise to Good Shepherd's Home to lapse and to pass under the laws of intestate succession. (4) Section 504.11, Code, applied to the residuary bequest made to Good Shepherd's Home. (5) The court erred in finding that the one-fourth interest provided for in Item Nineteenth of testator's will passed to St. Monica's Home rather than to Catholic Charities.

The first three propositions relied upon by the appellant for reversal all have essentially the same thrust, and will be dealt with together. Propositions four and five will be dealt with separately.

I. Appellant asserts the trial court erred in finding there was no possible construction of the will of Mary Groh Staab which would entitle the appellant to the residuary devise given in said will to Good Shepherd's Home and in failing to find a general charitable intent in testator's will, and in failing to apply the doctrine of cy pres to the residuary bequest made to Good Shepherd's Home, and declaring the residuary devise to Good Shepherd's Home to lapse and pass under the laws of intestacy. The doctrine of cy pres is a doctrine of construction not of administration, and is only a liberal rule to ascertain the intention of a testator. Hodge v. Wellman, 191 Iowa 877, 878, 179 N.W. 534, 14 C.J.S. Charities section 52, p. 512. A significant limitation of the cy pres rule is that the gift's basic purpose cannot be changed, and property devised to education cannot be judicially diverted to religion, relief of the poor or sick, or general charity, nor vice versa. 14 C.J.S. Charities section 52, page 517; Board of Education of City of Rockford v. City of Rockford, 372 Ill. 442, 445, 24 N.E.2d 366, 371, 372. The testator here was acting within her undoubted right to designate the beneficiaries of her estate, and the law and the courts are bound to respect her clearly expressed wishes. However, as here, where the bequest is to a named beneficiary and no specific charitable purpose is directly expressed in clear and unequivocable terms, the difficulties attendant to a proper determination are manifold. If the charitable character of the bequest had been apparent from the will, all doubts would be resolved in its favor. Wilson v. First National Bank, 164 Iowa 402, 414, 145 N.W. 948, 952; Mary Franklin Home for Aged Women v. Edson, 193 Iowa 567, 573, 187 N.W. 546, 548; Eckles v. Lounsberry, 253 Iowa 172, 181, 111 N.W.2d 638, 640; In re Estate of Small, 244 Iowa 1209, 1227, 58 N.W.2d 477; In re Estate of Ditz, 254 Iowa 444, 449, 117 N.W.2d 825; Chapman v. Newell, 146 Iowa 415, 423, 125 N.W. 324. In passing on the questions presented to us by this appeal, we must be mindful that courts have no more authority to make wills for the dead than contracts for the living, according to judicial notions of fitness and propriety, and that it is much the duty of courts to uphold and enforce a will after death as to uphold and enforce an individual's contracts made during his life. Klumpert v. Vrieland, 142 Iowa 434, 436, 121 N.W. 34; Beidler v. Dehner, 178 Iowa 1338, 161 N.W. 32; Bash v. Bash, 9 Pa. 260; Dodge v. Williams, 46 Wis. 70, 1 N.W. 92; 50 N.W. 1103. Courts generally subscribe to the view that charitable bequests shall not be permitted to fail or lapse for lack of definiteness as to the purposes of the bequest. In re Estate of Cleven, 161 Iowa 289, 293, 294, 142 N.W. 986; Klumpert v. Vrieland, supra. Indeed, had the will under consideration here expressed *any* charitable purpose, the cy pres doctrine could be applied. Lupton v. Leander Clark College, 194 Iowa 1008, 1017, 1018, 187 N.W. 496; In re Estate of Nugen, 223 Iowa 428, 434, 272 N.W. 638. All parties to this appeal contend the intent of the testator must be determined from the will as a whole. We agree. Each paragraph of a will must be read in the light of the other provisions, and if

from a reading of the will as a whole, intent of testator is manifest, technical rules of construction must give way to indicated intent. In re Estate of Ritter, 239 Iowa 788, 796, 797, 32 N.W.2d 666, 2 A.L.R.2d 1301; Old Ladies' Home of Muscatine v. Hoffman, 117 Iowa 716, 717, 89 N.W. 1066, 1067. If the language of a will is unambiguous, plain and certain, the intention of the testator must be ascertained from the will itself and nothing else. In re Estate of Thompson, Iowa, 164 N.W.2d 141, 146. In re Estate of Artz, 254 Iowa 1064, 1070, 120 N.W.2d 418, 422; In re Estate of Zang, 255 Iowa 736, 739, 123 N.W. 2d 883, 885. Extrinsic evidence to show testator's intent may be resorted to only in the event there is determined to be ambiguities in the provisions of the will. In re Estate of Zang, supra. We perceive no ambiguity in the testator's will before us here.

■ Certainty of purpose in the dedication of an estate to charitable uses is fundamental. Chapman v. Newell, supra. Cases of this character must be determined upon principle according to the peculiar facts of each case. The will under consideration here contains no provision for reversion. Obviously the testator could not have contemplated that the provisions of her will could not in some way be carried out, and that her property would ultimately pass to her heirs. She did not, however, state or express a purpose in her will for which the bequests in Item Nineteenth were to be utilized, simply naming beneficiaries in such item. If this court were to adopt the construction for which counsel for appellant contends, it would be in effect making a will for the decedent, and reading into the will something which is not apparent from an instrument which is not in any sense ambiguous. Resultantly, therefore, we must conclude the trial court was correct in finding there was no possible construction of the will of the testator justifying the application of the doctrine of cy pres with respect to the bequest in the will in favor of Good Shepherd's Home, and in ordering the devise to Good Shepherd's Home to lapse and to pass under the laws of intestacy.

■ II. Appellant asserts section 504.11, Code, should have been applied to the residuary bequest made to Good Shepherd's Home. Section 504.11 provides, "When a local religious society shall have ceased to support a minister or leader or regular services and work for two years or more, or as defined by the rules of any incorporated state, diocesan, or district society with which it has been connected, it shall be deemed extinct, and its property may be taken charge of and controlled by such state or similar society of that denomination with which it had been connected." The appellant contends that the Legislature in enacting the cited section, was attempting to incorporate by legislation into the codified law of this state the cy pres doctrine, and that the appellant is, therefore, entitled to the benefit of such section. We must conclude, however, that the cited section applies only to property vested in extinct religious societies at the time the corporation ceased operations. A nonprofit corporation upon the surrender of its charter, ceases to be a body corporate just as would a corporation organized for profit. We must conclude that Good Shepherd's Home was not in existence at the date of decedent's death, from which date her will speaks, and was not qualified to accept and receive the devise or bequest provided for it in Item Nineteenth of decedent's will. Section 504.11, Code, has no application to the fact situation in this case.

■ III. Appellant further asserts the trial court erred in finding that the one-fourth portion of the residue passed to St. Monica's Home rather than to appellant. We are unable to agree with this contention. Here again, we are faced with the fact that the testator expressed no charitable purpose and merely designated her beneficiaries. St. Monica's Home was still in existence. It was at the date of the execution of testator's will an Iowa corporation with its principal place of business at Sioux City, and was operated by the

Sisters of St. Benedict as a home for unwed mothers and children under four years of age. The same religious order continued to operate the home until September 1962, when it discontinued its operation for such purposes but retained its corporate identity under the same name and style, and on September 16, 1963, began operating as a home for retired persons, or an Old Folks' Home, for which purposes it has continued to operate until the present. There is nothing apparent from the will of the testator which would have led the trial court to conclude that the testator intended any organization other than St. Monica's Home to be the object of her bounty. Had she intended the bequest provided for St. Monica's Home to have been used to benefit unwed mothers and children under the age of four years, she could have, and should have, clearly expressed such charitable purpose and intent in the will itself. For the trial court to have directed the payment of the bequest to St. Monica's Home to the appellant in this case would have necessitated the trial court's applying the cy pres doctrine here, and as above stated, the doctrine is applicable only where it becomes impossible or impractical or illegal to carry out the particular charitable purpose. In re Berry's Estate, 29 Wis.2d 506, 139 N.W.2d 72, 77. A devise to a society or organization existing for charitable purposes without a declaration of the use to which the gift is to be put is given in trust to carry out the objects for which the organization was created. In re Los Angeles County Pioneer Society, 40 Cal.2d 852, 257 P.2d 1, 15 Am.Jur.2d 43, section 35, Charities.

IV. We must assume testator selected language adapted to express her meaning, and that she knew and appreciated the effect of language used in her will. We must further assume she had knowledge of the effect of the change of mode of operation of St. Monica's Home and of the complete dissolution of Good Shepherd's Home. In re Estate of Braun, 256 Iowa 55, 60, 61, 126 N.W.2d 318. In re

Estate of Davis, 204 Iowa 1231, 1236, 213 N.W. 396.

We conclude the order and declaratory judgment of the trial court was obedient to the terms of testator's will and affirm.

Affirmed.

All Justices concur except BECKER, J., who concurs specially.

BECKER, Justice (concurring specially).

I concur in the result and in the opinion except for the statement in Division I, that holds extrinsic evidence is inadmissible to determine intent except where there is said to be an ambiguity. Wills, like contracts, are composed of words. We have held the meaning of words, as used in contracts, to be susceptible to extrinsic evidence as an aid to interpretation. This on the theory words, de-hors the circumstances under which they are used, never fully and completely express the meaning of the person using them. Hamilton v. Wosepka, Iowa, 154 N.W.2d 164.

In this case the extrinsic evidence is not sufficient to indicate any meaning other than the plain and ordinary meaning to be given to the terms. But this is not to say evidence of the circumstances surrounding the use of the terms is inadmissible. Such strictures divert us away from a quest for the true intent of the testator; not toward it.

In several recent cases we have repeated the following rules: "Our position in will construction cases was well summarized in In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504. There we said the law is well settled (1) the testator's intent is the polestar and if expressed must prevail; (2) his intent must be gathered from a consideration of (a) *all* the language contained in the four corners of his will, (b) his scheme of distribution, (c) *the circumstances surrounding him at the time he made his will,* (d) *the existing facts;* and (3) technical rules or canons of construction should be resorted to *only* if the

language of the will is clearly ambiguous or conflicting or the testator's intent is for any reason uncertain. (Citations)." (Emphasis supplied). In the Matter of the Estate of Maude Leber Lamp, Iowa, 172 N. W.2d 254 (opinion filed November 12, 1969).

These rules are consistent with what is said in IX Wigmore on Evidence, section 2470, page 227: "The truth had finally to be recognized that words *always* need interpretation; that the process of interpretation inherently and invariably means the ascertainment of the association between words and external objects; and that this makes inevitable a free resort to extrinsic matters for applying and enforcing the document. 'Words *must* be translated into things and facts.' Instead of the fallacious notion that 'there should be interpretation only when it is needed', the fact is that there must always be interpretation. Perhaps the range of search need not be extensive, and perhaps the application of the document will be apparent at the first view; but there must always be a traveling out of the document, a comparison of its words with people and things. * * *." (Emphasis by author).

The rules just quoted are workable and leave room for the admission of extrinsic evidence *as an aid to interpretation*. Both the rules announced by the majority and the rules quoted in this special concurrence have been followed in the past. Often they are quoted in the same case. In the Matter of the Estate of Lamp, supra. They are inconsistent. I would follow one set of rules rather than move from one to the other as the exigency of the individual case dictates.