IN RE ESTATE OF ALBERT F. RAHFELDT, deceased.

FLORENCE SCHAPER et al., appellants, v. W. H. BROWN, executor of estate of Albert F. Rahfeldt, et al., appellees.

No. 50372.

OCTOBER 17, 1961.

Lundy, Butler & Wilson, of Eldora, for appellants.

Smedal & Maurer, of Ames, for W. H. Brown, executor of estate of Albert F. Rahfeldt, appellee.

John R. Hattery, of Nevada, for Lydia Rahfeldt Gull, William Rahfeldt, Robert Rahfeldt, and Edward Rahfeldt, appellees.

PETERSON, J.—This is an action involving the construction of paragraph II of the will of Albert F. Rahfeldt, who died in Story County on August 8, 1960.

Paragraph II of the will is as follows:

"I give, devise, and bequeath to my son, Fred A. Rahfeldt, the Southeast Quarter (SE ¼) of Section Twenty-eight (28), Township Eighty-five (85) North, Range 21, West of the 5th P. M., Story County, Iowa, to have and to hold and enjoy the use and income thereof for and during his natural life, and said

Fred A. Rahfeldt shall pay all insurance, repairs, and taxes out of the income derived from said real estate, as the same shall become necessary, or due, as the case may be, and after his death, said real estate shall be sold and the net proceeds therefrom distributed as follows:

| | |
|---|---|
| To Florence Rahfeldt, daughter of Fred A. Rahfeldt, | $500.00 |
| To Helen Rahfeldt, daughter of Fred A. Rahfeldt, | 300.00 |
| To Marguerite Rahfeldt, daughter of Fred A. Rahfeldt, | 500.00 |
| To Albert Rahfeldt, son of Fred A. Rahfeldt, | 500.00 |
| To Frances Rahfeldt, daughter of Fred A. Rahfeldt, | 500.00 |
| To Frank Rahfeldt, son of Fred A. Rahfeldt, | 300.00 |
| To Lee Rahfeldt, son of Fred A. Rahfeldt, | 500.00 |

and the remainder thereof divided equally between my children, or to the heirs of any who may have died, such heir to receive only the deceased child's share."

The trial court held that under the provisions of the last sentence the seven children of Fred A. Rahfeldt, who would be his heirs after his death, would not participate in the remainder of the money secured from the sale of the tract of land in which he held a life estate. Fred A. Rahfeldt and his children have appealed.

To assist in arriving at the intent of the testator it is advisable that we make a synopsis of the provisions in the other paragraphs of the will.

Under paragraph III decedent devised to his sons Robert and Edward 160 acres in Story County subject to Edward paying to Robert one half of decedent's indebtedness to Robert. The record does not disclose the amount of the indebtedness.

In paragraph IV decedent devised the income from 80 acres of land in Story County to his daughter Lydia with the provi-

sion that after her death her children should receive the property.

In paragraph V he bequeathed $3000 to Lydia for repairs and improvements on said farm.

In paragraph VI decedent devised to his son William and his daughter Nellie 160 acres in Story County. He provided that Nellie should pay William one half of an indebtedness which decedent stated he owed William on a promissory note. Again the record does not disclose the amount of the note.

In paragraph VII the decedent devised to his son Charley 80 acres in Story County.

In paragraph VIII decedent devised the life income from an 80 acres of land in Story County to his daughter Charlotte, and after her death said 80 acres to be the property of her children.

In paragraph IX decedent provided that his executors should sell another 80 acres he owned in Story County at not less than the appraised value. He granted to his son William the first right to buy such land at the appraised value if he desired to do so.

In paragraph X he bequeathed to his son Fred his carpenter and mechanic's tools.

In paragraph XI he canceled any accounts or notes against any children.

In paragraph XIII he divided any residue equally among his eight children.

Both appellants and appellees announce many well-known principles used in connection with construction of wills. The following three are peculiarly and sufficiently pertinent as to the will involved in the case at bar: 1. The cardinal rule in the construction of wills is that the intention of the testator must be ascertained and given effect. 2. A court should not add words to a will, unless it is clear beyond a reasonable doubt that the addition effectuates testator's intent. 3. To arrive at the intent of the testator the will as a whole must be considered; the common expression is that it must be picked up by its four corners and carefully scrutinized.

Precedent in will construction cases is only of value in a

few cases. There are exceptions, to which we will refer hereinafter. The basis for this statement is that each will-construction case normally involves a fact situation peculiar unto itself. We are aided by certain well-established principles, such as the above, which are used as guideposts in arriving at a proper construction.

■ I. The chief purpose of construction of a will is to discover and carry out the intent of the testator as expressed in the will, and when the question is raised this is the function of the court. In other words, the intention of the testator is the prime consideration. This doctrine has been announced in literally hundreds of cases in the nation. We will cite only a few recent Iowa cases. In re Estate of Nugen, 223 Iowa 428, 272 N.W. 638; In re Estate of Heckmann, 228 Iowa 967, 291 N.W. 465; In re Estate of Schmitz, 231 Iowa 1178, 3 N.W.2d 512; In re Estate of McCulloch, 243 Iowa 449, 52 N.W.2d 67; Rodenburg v. Rodenburg, 247 Iowa 444, 74 N.W.2d 241; In re Estate of Yarolem, 247 Iowa 849, 76 N.W.2d 770; Pringle v. Houghton, 249 Iowa 731, 88 N.W.2d 789. Also see 95 C. J. S., Wills, section 590, page 731.

■ It was the opinion of the trial court that it was not the intention of the testator to include Fred's seven children in the last clause of paragraph II. With this conclusion we do not agree. The testator provided in said paragraph that after Fred's death the 160 acres in which he had a life estate should be sold. He then provided that the seven children of Fred should have certain specific bequests out of the proceeds of the sale, which total $3100. In the last sentence of the paragraph the testator stated that the remainder of the proceeds of the sale should be "divided equally between my children, or to the heirs of any who may have died, such heir to receive only the deceased child's share." It seems clear from this language that the testator did not exclude Fred's children.

The testator, Albert F. Rahfeldt, was obviously a man of ability and experience. The will was carefully drawn and he made careful provision for all eight of his children. He had accumulated 800 acres of Story County land which, on the present market, would doubtless be worth over $300,000. The

care with which the will was drawn would clearly indicate that if he did not intend Fred's children to receive their one-eighth share of the proceeds of the sale of the quarter section he would have added at the end of paragraph II three simple words "except Fred's children."

We considered a somewhat similar situation in Rodenburg v. Rodenburg, supra. Mr. John J. Rodenburg had accumulated a large acreage of land in Pottawattamie County. The question was whether or not under his will he intended to create a fee simple title in certain land if Hugo Rodenburg, one of his children, did not have issue until after his death. Hugo's child was born after death of testator. We held the time of Hugo having a child was not important and said that if the testator intended to exclude Hugo because he did not have a child until after testator's death he could very easily have added the words " 'at the time of my death' " causing the provision in the will to read " 'If any of my children shall be without child or children *at the time of my death* then * * * such children * * * are given only a life estate.' " (Page 449 of 247 Iowa) We held the testator not having included such words the fact that Hugo had a child after his father's death was evidence of an intention under the will that Hugo should become the fee owner. We stated at page 450 of 247 Iowa: "As to those to whom it applies it is satisfied by the birth of issue at any time."

In In re Estate of McCulloch, supra, the following helpful statement appears on page 457 of 243 Iowa: "Precedents in such cases may be very properly employed as aids, but they should not lead either court or counsel to insist on a construction of a will which, in view of the situation disclosed in the particular case under inquiry, it is clear was not in the mind of the testator."

The question has been raised that the specific bequests appearing in paragraph II is an evidence of intention on the part of testator that Fred's children should not be included as having a one-eighth interest in the remainder of the proceeds of the sale of the land. A similar question was before this court in Atchison v. Francis, 182 Iowa 37, 165 N.W. 587, L. R. A. 1918E 1087. Testator left a life estate in his wife and then

provided that after her death all property in the estate should be sold and his grandson should be paid $100. After payment of said item the remainder of the proceeds should be divided among his three children and if any of the children were deceased to their children. We held that the specific bequest did not interfere with the rights of the grandchildren; that the remainder vested at the time of the death of the testator, and that the provision with reference to a specific bequest did not destroy such provision as to the remainder.

■ Simes and Smith Text states as to Future Interests, section 735: "The weight of authority is to the effect that the mere fact that the donee of the present interest is one of the testator's heirs will not prevent the court from determining the class of heirs as of the death of the testator. Arguments in favor of early vesting of future interests support that view. Moreover, it accords with the position taken by most modern courts to the effect that the heirs of the owner of a future interest are to be determined as of the death of the [testator]."

■ II. The addition of words to a testator's will by the courts is not permitted unless it should be a matter of correcting a description as to real estate or a similar technical matter. Henkel v. Auchstetter, 240 Iowa 1367, 1374, 39 N.W.2d 650; 57 Am. Jur., Wills, section 1153, page 752.

In the face of the clear statement of the testator as to Fred's children being included in the eight children or groups entitled to divide the remainder of the proceeds of the sale of the 160 acres, the trial court has in fact added the words "except Fred's children." In view of the testator's intent, clearly stated, it is our opinion that such addition of words is not justified.

In In re Estate of Clifton, 207 Iowa 71, 76, 218 N.W. 926, 928, the court said: "Though trite and monotonous reiteration to say so, it must be held constantly in mind that the object of testamentary interpretation is to ascertain the purpose of the testator, and when ascertained, to give it effect, if this can be done without violating any settled rule of law. In the search therefor, the court must, as nearly as it can, take its position in the environment of the testator, and in the light of the facts known to him, and in which he wrote the will."

With reference to this cardinal rule of testatorial intent, the court by Weaver, C. J., in Hiller v. Herrick, 189 Iowa 668, 670, 671, 179 N.W. 113, 114, said: "It is the most familiar rule or phrase in the law of testamentary construction—but unfortunately is sometimes neglected, in the search for precedents to sustain a desired conclusion."

We should arrive at the intent of the testator by the words he used in his will. In In re Estate of McCulloch, supra, this court said: "The question is not what the testator may have meant, but what did he say, what is the meaning of the words he actually used in the will?" A careful scrutiny of the last sentence in testator's will fails to show any intent · by the testator to eliminate Fred's children in the distribution of the proceeds of the sale of the farm. There is no indication in his written statement that he desired Fred's children to be left out when he said the remainder to be "divided equally between my children, or to the heirs of any who may have died." It is true that under paragraph II when the land is sold and the proceeds are to be divided, Fred will have passed away and there is no chance of him receiving any part of the proceeds, but the statement of the testator as to the "heirs of any who may have died" is crystal clear.

In 95 C. J. S., Wills, section 589, page 727, the text states: "* * * rules of construction cannot be used to write something into a will which the testator did not himself put in it."

III. To arrive at the intent of the testator the will as a whole should be considered; the statement has often been made that it must be picked up by its four corners and carefully scrutinized. In re Estate of McCulloch, and Rodenburg v. Rodenburg, both supra; Tague v. Tague, 248 Iowa 1258, 85 N.W.2d 22; In re Estate of Chadwick, 247 Iowa 1050, 78 N.W.2d 31; In re Estate of Yarolem, supra; Obetz v. Boatmen's National Bank, Mo., 234 S.W.2d 618; In re Estate of Combs, 136 Cal. App. 286, 28 P.2d 711; In re Estate of Kruger, 55 Cal. App.2d 619, 131 P.2d 619; Annotations in 137 A. L. R. 212 and 162 A. L. R. 1134; In re Estate of Pottorff, 216 Iowa 1370, 250 N.W. 463.

In In re Estate of Yarolem, supra (page 854 of 247 Iowa), we quoted as follows: "It is a cardinal principle of testamentary construction that the court reads the will of a testator as a whole, each provision thereof in the light of all the other provisions, and ascertains, if practicable, the testator's intent, and if such ascertained intent be lawful it will be respected and given effect accordingly. * * *."

Consideration of the will in the case at bar as a whole is of value in arriving at the intention of the testator. We considered this question somewhat in detail in the Rodenburg case where we said on page 450 of 247 Iowa, "and the will as a whole indicates his desire to treat them [his children] with substantial equality." We then proceeded to consider the will item by item and child by child, thus supporting the decision.

In In re Estate of McCulloch, supra, this court stated as to well-known principles of construction: "Among them is the rule that the testator's intentions must not be ascertained from a single part or paragraph of the will but the instrument must be read and considered as a whole, each part in connection with every other part and with the entire will, and each part given meaning and operation if possible. It must be assumed that each part of the will was incorporated by the testator with some definite purpose and it should not be discarded or disregarded without sound reasons."

Justice Weaver used some helpful language in Anderson v. Wilson, 155 Iowa 415, 417, 428, 136 N.W. 134, 135, 139. The testator said: "the one half thereof shall go: 'to my brothers of the half blood equally and in case any are then deceased his share to go to his children equally.' " A half brother died, leaving one child. A brother and sister of decedent claimed such child was not intended by the testator to be an heir. The trial court sustained the objectors, but this court reversed, and held he was an heir and said: "If, having used a general description which includes the child of the deceased half-brother, the testator had so desired to modify or restrict it as to exclude him, why did he not do so in terms? And is not the very fact that he left the general language unmodified a good reason for concluding that he desired it to be given force accordingly?"

In the case at bar is not the fact that Albert F. Rahfeldt left the general language unmodified, a good reason to hold he desired Fred's children to share in the proceeds of the sale of the land?

A reasonable conclusion from the will as a whole is that it is apparent from the care with which the will was executed, that Mr. Rahfeldt was desirous of dividing his property in substantially equal shares among his children, or their respective heirs. Outside of Fred he left 80 acres to each of his other children or their heirs. To Fred he left the use of 160 acres. It is impossible to tell at this time exactly what that use is worth. It depends on the lifetime of Fred. It is obvious he felt that such use and $3100 equalled an 80-acre tract. The 80 acres left to each of the other children or their family would reasonably be worth more than $30,000. Unless conditions change when Fred passes away, the farm in which he has a life estate will be worth in excess of $60,000. The one-eighth interest of Fred's children would, therefore, be worth approximately $7500. It is reasonable and fair, in view of his division of property as between his children and their families, that he would want Fred's children to have their share of the proceeds from the sale of the farm. It would aid materially in the even division of his property, which it appears from the will the testator intended to make.

The decision and judgment thereon, of the trial court, is reversed.—Reversed.

GARFIELD, C. J., and OLIVER, LARSON, THORNTON, and SNELL, JJ., concur.

THOMPSON and HAYS, JJ., dissent.

BLISS, J., not sitting.

THOMPSON, J. (dissenting)—I think the reasoning and judgment of the trial court was correct and must respectfully dissent from the majority opinion. When the testator said "the remainder thereof divided equally between my children" he was clearly referring to his own children and necessarily this excluded his son Fred; because this clause did not become effective

82

until Fred had died. The next clause "or to the heirs of any who may have died," necessarily refers back to "my children" in the preceding clause. The reason why the testator chose to do this, and whether it resulted in an even division of his property among his heirs are matters not of our concern, in view of what seems to me his clearly express intent. I would affirm the trial court.

HAYS, J., joins in this dissent.