In the Matter of the ESTATE OF Lillian P. THOMPSON, Deceased,

Lois Minch and Roger Thompson, Appellants,

Children International, Piney Woods Country Life School, and World Vision, Appellees.

No. 92–574.

Supreme Court of Iowa.

Jan. 19, 1994.

James C. Ellefson of Welp, Harrison, Brennecke & Moore, Marshalltown, for appellants.

Frank B. Johnston of Newbrough, Johnston, Brewer, Maddux & Nadler, Ames, for appellees Children Intern. f/k/a Holy Land Christian Mission Intern., Piney Woods Country Life School, and World Vision.

Considered by LARSON, P.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

In this case we must ascertain the meaning of the term "personal property" as used in the will of the testator Lillian P. Thompson. In paragraph two of her will, Thompson bequeathed all her "personal property" to her niece and nephew in equal shares. In paragraph six Thompson left the residue of her estate, including "personal property," to certain nonprofit institutions. These residuary beneficiaries objected to the executors' proposed disposition of both tangible and intangible personal property to Thompson's niece and nephew.

The district court ruled that "personal property" meant tangible personal property in paragraph two of the will and intangible personal property in paragraph six. The court of appeals reversed. It held that the term "personal property" as used in both paragraphs of Thompson's will meant all personal property, tangible and intangible. We vacate the decision of the court of appeals and affirm the district court's decision.

## I. *Background Facts and Proceedings.*

Thompson died testate on July 29, 1989. She was survived by her sister and several nieces and nephews. The present dispute arose after her will was admitted into probate. For a complete understanding of the scheme of distribution contemplated by Thompson in her will, we review the terms of the will in some detail.

The will initially provided for the payment of all debts and obligations. The will then devised Thompson's "personal property" to one of her nieces and one of her nephews stating:

> SECOND. I hereby devise and bequeath to my niece, Lois Minch, and to my nephew, Roger Thompson, in equal shares, all the personal property belonging to me. Should any of this personal property not be wanted by either of them, then that part which they do not care to take shall be given to the Salvation Army insofar as they might care for it, and anything remaining thereafter shall be disposed of by my executor in any manner that he deems advisable. Should either my niece or nephew named above predecease me, then the survivor shall take all of the said personal property. This personal property shall also include any automobile of which I die seized.

In the next two paragraphs of the will, Thompson directed the executors to sell her home and her interest in a farm. Thompson's will gave her niece and nephew, Lois and Roger, the opportunity to buy Thompson's interest in the farm for three-fourths of its appraised value. Lois and Roger elected to do so. This bequest had a total value of approximately $42,000.

Thompson also made several small monetary bequests to her sister, two cousins, a foster niece, an adopted niece, two friends, another nephew and two organizations, World Vision International and Holy Land Missions. None of these bequests exceeded $3000.

The sixth paragraph of the will devised the residue of Thompson's estate:

> SIXTH. All the rest and residue of my estate of whatever kind and nature, both real, personal or mixed and wheresoever located of which I die seized or entitled, up to $60,000.00 I devise and bequeath to the Piney Woods Country Life School, [address], and to the School of the Ozarks, [address], in equal shares. . . .

> Should this residuary estate of mine exceed $60,000.00 then that amount over $60,000.00 I devise and bequeath to the Holy Land Christian Mission International, [address], and Piney Woods Country Life School, and World Vision, in equal shares, said inheritances to be used where most needed.

Initially the executors interpreted the second paragraph of the will to give only Thompson's tangible personal property to Lois and Roger. However, the Iowa Inheritance Tax Department of the Iowa Department of Revenue interpreted the bequest to Lois and Roger to include intangible personal property. The Department demanded payment of Iowa inheritance taxes on all personal property. As a result, the executors filed a final report in which they proposed to distribute all of Thompson's personal property, both intangible and tangible, to Lois and Roger in equal shares.

Thompson's personal property amounted to almost $166,000. It included treasury bills, bonds, investment accounts, bank accounts, household goods and her personal effects. Under the terms of the final report Lois and Roger would each receive approximately $71,000, after deductions for property already received and for state inheritance tax. When specific bequests in the will were subtracted from the value of real estate owned by Thompson, approximately $129,000 remained to be distributed under the residuary clause of the will.

The residuary beneficiaries filed an objection to the final report. They argued that "personal property" as it was used in paragraph two of the will meant only tangible personal property and that Thompson intended that her intangible personal property would pass under the residuary clause. Under this interpretation of the will, the residual beneficiaries would receive an additional $153,000.

The district court agreed with the residuary beneficiaries. The court found that Thompson intended to include some personal property in her residuary estate because paragraph six of her will provided that "[a]ll the rest and residue of my estate of whatever kind and nature, both real, *personal,* and mixed" would go to the residuary beneficiaries. (Emphasis added.) The court decided that the term "personal property" meant tangible personal property in paragraph two of the will and intangible personal property in paragraph six. Lois and Roger appealed.

The court of appeals reversed the district court's ruling. Finding that the term "personal property" was ambiguous, the court of appeals construed the term to include both tangible and intangible property. In its decision the court of appeals decided Thompson used the term "personal property" in the residuary clause of her will to insure a complete testamentary disposition of all her property. The court noted that "[b]y listing all the possible types of property, she insured no part of the estate was left to pass as intestate property." Further, the court rejected a construction of "personal property" which would give the term different meanings in the same document.

We granted the residuary beneficiaries' application for further review. This case was tried as a proceeding in equity. Therefore, our scope of review is de novo. Iowa R.App.P. 4.

## II. *Applicable Law.*

The primary goal in interpreting a will is to discern the intent of the testator. *In re Estate of Hoagland,* 203 N.W.2d 577, 580 (Iowa 1973). This intent is determined by the language used in the will, the scheme of distribution, the circumstances surrounding the will's execution and the existing facts. *In re Estate of Rogers,* 473 N.W.2d 36, 39 (Iowa 1991). The question is not what the testator meant to say but what the testator meant by what he or she did say. *Id.* We consider the entire will and strive to give each part meaning and effect. *Id.* With these principles in mind we now turn to an examination of the meaning of the term "per-

sonal property" as used by Thompson in her will.

## III. *Meaning of "Personal Property".*

The term "personal property" is susceptible of more than one meaning. *Compare In re Estate of Chadwick,* 247 Iowa 1050, 78 N.W.2d 31 (1956) ("personal property" referred to tangible personal property) *with In re Will of Scheiner,* 215 Iowa 1101, 247 N.W. 532 (1933) ("personal property" included both tangible and intangible property). In its technical or broader meaning the term "personal property" includes everything that is the subject of ownership except lands or interests in lands. *In re Estate of Chadwick,* 247 Iowa at 1054, 78 N.W.2d at 33–34. However, it may also be used in its ordinary and popular meaning as including only goods and chattels, tangible things. *Id.* There is no presumption that the term when used in a will has a technical meaning rather than its popular meaning.

In *Chadwick* we concluded that the term "personal property" as used in Chadwick's will meant only tangible personal property. *Id.* We noted that a broader interpretation of "personal property" which would include both tangible and intangible personal property would defeat another bequest in the will. *Id.* at 1055, 78 N.W.2d at 34.

In contrast, in *Scheiner* we held that "personal property" as used in Scheiner's will referred to both tangible and intangible personal property. *In re Will of Scheiner,* 215 Iowa at 1103, 247 N.W. at 534. We reached this conclusion because the residuary clause disposed of the testator's "real or mixed" property only. *Id.* We concluded this language evidenced the testator's belief that her prior disposition of "personal property" effectively disposed of all her personal property. *Id.*

Although both parties argue at length concerning the applicability of these precedents, we note that prior cases are normally of limited value in will-construction cases. *In re Estate of Rahfeldt,* 253 Iowa 72, 75–76, 111 N.W.2d 303, 305 (1961). "The basis for this statement is that each will-construction case normally involves a fact situation pecu-

liar unto itself." *Id.* at 76, 111 N.W.2d at 305. That is the case here. Though both *Chadwick* and *Scheiner* bear some similarities to the present case, this case has its own unique facts. Nevertheless, we briefly discuss the *Chadwick* decision to clarify our holding in that case.

Lois and Roger argue that in *Chadwick* we held the term "personal property" is interpreted narrowly *only* when another bequest would be eliminated by using a broad definition. In the present case, a broad interpretation of the term "personal property" does not eliminate Thompson's bequest to the residuary beneficiaries. Approximately $129,-000 would remain to be distributed under the residuary clause of the will. Therefore, Lois and Roger assert that *Chadwick* requires us to apply the broad meaning here and hold that "personal property" includes everything that is the subject of ownership except lands and interests in lands. We reject this interpretation of our holding in *Chadwick.*

In *Chadwick* we interpreted the term "personal property" narrowly to give effect to another bequest in the will. We did not consider the converse situation such as we have in the present case—whether the term "personal property" may be interpreted narrowly even when not necessary to preserve another bequest. Moreover, the fact that a broad definition of the term would have nullified the residual bequest in *Chadwick* merely showed the testator's intent that the bequest of "personal property" was of tangible property only. Otherwise, the residual bequest would have been meaningless. Two principles can be gleaned from *Chadwick.* First the goal of interpretation is to ascertain the intent of the testator. Second we strive to give meaning to every provision in the will.

■ Applying these principles to Thompson's will, we conclude that she intended the term "personal property" in paragraph two to include only her tangible personal property. Significantly, Thompson directed that unwanted "personal property" be given to the Salvation Army. This language is most consistent with a bequest of personal effects, clothing and household goods. *In re Estate of Graham,* 49 Cal.2d 333, 316 P.2d 945, 947 (1957). Thompson foresaw that Lois and Roger may not want some of this property, but recognized that a charitable organization selling secondhand goods could make use of it.

Further, Thompson stated in paragraph two that her "personal property" included her automobile. This provision would be unnecessary if Thompson intended to use the term "personal property" in a broad sense. If "personal property" was meant to include all of Thompson's personal property both intangible and tangible, no one would doubt that the term included her automobile. However, if she used "personal property" in its narrow meaning, roughly equivalent to personal effects, she may have been concerned that the executors would not include her automobile in this bequest.

Moreover, if Thompson intended that "personal property" in paragraph two of her will include both tangible and intangible personal property, it does not make sense that she bequeathed "[a]ll the rest and residue of [her] estate of whatever kind and nature, both real and *personal* or mixed," to the residuary beneficiaries. (Emphasis added.) The inclusion of personal property in paragraph six would make no sense because she would have already disposed of her personal property in paragraph two. The court of appeals explained that Thompson was simply insuring in paragraph six that none of her property pass intestate. However, Thompson had already accomplished this by providing in paragraph two that all unwanted personal property would go to the Salvation Army or be disposed of by her executors.

Lois and Roger explain the reference to personal property in the residuary clause as Thompson's effort to include the proceeds from the sale of her real property in the residuary bequest. But Iowa Code section 633.384 (1989) makes such a provision unnecessary. Section 633.384 states that the conversion of real estate to personal property does not affect the distribution of the estate under the provisions of the will. Consequently, the cash proceeds of the real estate sales would pass under the residuary clause even without the reference to personal property in that paragraph. If the reference to personal property in the residuary clause has

any significance, it must refer to intangible personal property.

In summary, the language used in the will and the scheme of distribution both support the conclusion that Thompson intended to give only her tangible personal property to Lois and Roger. The district court heard no evidence so the only other facts to be considered are those that appear in the pleadings. *See In re Estate of Rogers,* 473 N.W.2d 36, 39 (Iowa 1991) (extrinsic evidence may be considered when a term in the will is ambiguous). The facts in the record do not suggest an intent contrary to the intent shown by the language of the will.

When Thompson died Lois was sixty-six years old and lived in Fargo, North Dakota. Roger was eighty years old and lived in Seattle, Washington. Under our interpretation of the will, Lois and Roger will each receive almost $30,000. This amount is significantly more than the bequests made to Thompson's other nieces and nephews. There are no extrinsic facts nor is there language in the will to indicate that Thompson intended or had reason to leave the majority of her estate to Lois and Roger.

We realize that our interpretation of the will gives the term "personal property" a different meaning in paragraph six than the same term has in paragraph two. However, we believe this is necessary to effectuate the intent of the testator. Although ordinarily the repeated use of the same term in a testamentary instrument creates an *inference* that the term has the same meaning wherever used, this case is one of the rare situations where this inference is overcome for the reasons discussed above. *See In re Estate of Miguet,* 185 N.W.2d 508, 515 (Iowa 1971) (use of same words in will ordinarily creates inference that they have the same meaning "unless differently appearing in the context, or applied to different subjects"). Moreover, it is inappropriate to resort to a rule of construction when to do so would be contrary to the expressed intent of the testator. *Porter v. Porter,* 286 N.W.2d 649, 655–56 (Iowa 1979).

## IV. *Conclusion.*

We conclude that Thompson's intent was that "personal property" in paragraph two meant her tangible personal property and "personal property" in the residuary clause meant her intangible personal property. Therefore, Lois and Roger will receive Thompson's tangible personal property in addition to their below-market-value purchase of Thompson's farm interest. All intangible personal property will be distributed under the terms of the residuary clause of the will.

**DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**