In the Matter of the ESTATE OF Donald OHRT, Deceased.

Randall Ohrt, Appellant–Cross–Appellee,

Linda Uthoff, Sandra Evans, and Carl N. Evans, Appellees–Cross–Appellants.

No. 94–2151.

Court of Appeals of Iowa.

April 23, 1996.

Ross Hauser of the Shea Law Offices, Cedar Rapids, for appellant.

Morris L. Eckhart of Milroy & Eckhart, Vinton, for appellees.

Heard by HABHAB, P.J., CADY, J., and PERKINS, Senior Judge. *

HABHAB, Presiding Judge.

Donald Ohrt died testate in Benton County in 1990, survived by his two daughters, Linda Uthoff and Sandra Evans, and his son, Randall Ohrt. Donald's wife, Margaret, died in 1986.[1] In their wills, each provided an option [2] to purchase farmland in favor of their son, Randall, who had been in a long-term farming partnership with his father. In addition to this option, Donald's will also bequeathed to Randall "all of my farm machinery, all farm tools, and my automobile."

The two daughters litigated a number of issues regarding Donald's will. An appeal was taken. In *In re Estate of Ohrt,* 516 N.W.2d 896, 900 (Iowa 1994) (*Ohrt I* ), the supreme court ruled on four specific issues. Only one of the rulings on those issues [3] is pertinent to the present appeal, that is, whether Randall's distribution of personal property to himself violated the terms of the will. The supreme court held that it did and remanded with the following direction: Randall was to either (1) reimburse the estate for the appraised value of any personal property distributed to him as might be necessary to satisfy estate debts or (2) reclaim the distributed property for the estate and arrange for their sale to satisfy estate debts. The court also ordered that Randall's option to buy, which was exercised in 1990, triggered the right of first refusal accorded to Sandra and her husband.[4]

In its remand ruling, the district court held Randall was required to pay the sum of $96,275 to the estate within ninety days of the date of the ruling for the personal property he distributed to himself. Noticeably absent was any requirement that Randall was to pay interest on the reimbursement amount. The court, in response to Randall's offer to purchase the farmland on a thirty-

---

* Senior judge from the Fifth Judicial District serving on this court by order of the Iowa Supreme Court.

1. In prior litigation, Randall's two sisters, Linda and Sandra, disputed the meaning of the option provision in Margaret's will. A family settlement was reached and Randall agreed to pay each sister $56,000.

2. The option agreement in Donald's will allowed Randall to purchase the farmland directly from the estate rather than from his sisters. The will sets forth the terms of the option.

3. In addition to the ruling mentioned, our supreme court also determined (1) the settlement agreed to under Margaret's will did not control

Randall's option to purchase under Donald's will; (2) Randall's option was subject to the right of first refusal which had earlier been granted to one of Randall's sisters and her husband; and (3) attorney fees granted to the law firm by the district court for representing Randall in his capacity as executor of Donald's estate were discretionary and there was no abuse of discretion.

4. The proceedings as it relates to the land that is the subject of the right of first refusal is not involved in this appeal, except to the extent that from this sale the estate has an additional $127,-000 which can be used for the payment of debts and obligations of the estate, if needed.

five-year contract with no down payment, also fixed other terms, discussed later in this opinion, under which Randall could purchase the farmland.

Randall subsequently filed a rule 179(b) motion to enlarge. Linda and Sandra filed a resistance to the motion. The district court denied the motion.

Randall appeals. Linda and Sandra cross-appeal.

**I. *Scope of Review*.** Our scope of review in this equity case is de novo. Iowa R.App. 4.

**II. *Option to Purchase Farmland*.** Randall was given an option to purchase the farmland under Donald's will. The following is an excerpt from that will:

> At any time after the giving of the notice to exercise the option and up to six (6) crop years thereafter my said son shall have the right to purchase said real estate on a land contract with a down payment *not to exceed* twenty percent (20%) of the total purchase price for said real estate and with *a minimum* of ten (10) years to pay the balance due on the contract.

(Emphasis added.) Randall properly exercised his option. After remand, he submitted to the court for approval an offer to purchase the farmland on a thirty-five-year contract with no down payment. Linda and Sandra resisted. The trial court thereafter ruled the sale price of the farmland would be $656,045 with a twenty percent down payment of $131,209. The balance was to be paid in ten equal annual installments of $52,483.60. Randall was ordered to pay interest on the unpaid balance at a variable rate, adjusted annually, from the date of possession.

The district court, in setting the terms for the option to purchase the farmland, mirrored those stated in a summary statement concerning the option in *Ohrt I*. The statement of the supreme court in *Ohrt I* that the appellees rely so heavily on, and which may have influenced the trial court in its remand decision, reads as follows:

> The option in Donald's will gave Randall six crop years during which he could lease the land but allowed him to buy it from the

estate (rather than from the sisters), paying twenty percent down with the balance to be paid in ten annual installments at three percent below the prevailing interest rate. The selling price of the land was specified as "sixty-five percent (65%) of the appraised value of said real estate as determined by the Iowa inheritance tax appraisers for Benton County."

*Ohrt I*, 516 N.W.2d at 898.

*Ohrt I* must be read consistently with the issues submitted, the questions it resolved, and its own facts. Considering all of these, it is clear the option provision in Donald's will was neither considered nor ruled on by the supreme court. It was not an issue before the court. Instead, as purely background information and in an effort to summarize the option provision, the supreme court merely provided the outside parameters for the option as stated in Donald's will.

While the terms of the option to purchase set by the district court are valid under the will, the district court may have felt it was bound by the statement of the supreme court as we have set forth above from *Ohrt I*. We reach this conclusion, for the district court directly quoted the outside parameters stated in *Ohrt I* and then ruled on the terms of the option to purchase which were identical to the outside parameters.

Such a heavy reliance on the recitation of facts from *Ohrt I* appears to be misplaced for at least two reasons. First, as was previously stated, the terms of the option to purchase were not relevant to any of the determinations in any of the issues decided in *Ohrt I*. Second, in adopting the outside parameters set out in the will as the terms for the option to purchase, the spirit of the intent of the testator was not followed.

■ Article VII of Donald's will gives Randall the option to purchase farmland from the estate. After the will states Randall has such an option, the will then sets out the provisions relating to the option.

> If my said son desires to purchase said real estate, he shall give notice in writing to the Executor of my estate within one (1) year after the date of my death, and if notice is given within said time, my said

son shall have the right to purchase said real estate from my Executor upon the following terms and conditions. My said son shall have up to six (6) crop years from the date of the giving of the notice as herein before provided to enter into a land contract for the purchase of said real estate with my Executor. During the interim between the giving of the notice and the entering into the land contract, my said son shall have the right to lease said land from the Executor of my estate on either a crop share basis or a cash basis at the generally prevailing rates for similar farm land. At any time after the giving of the notice to exercise the option and up to six (6) crop years thereafter my said son shall have the right to purchase said real estate on a land contract with a down payment not to exceed twenty percent (20%) of the total price for said real estate and with a minimum of ten (10) years to pay the balance due on the contract. The unpaid balance is to draw interest at a rate three percent (3%) below the interest being charged at that time by the Federal Land Bank Association of Cedar Rapids, Iowa, on loans of this nature. The selling price of the real estate shall be determined as follows: sixty-five percent (65%) of the appraised value of said real estate as determined by the Iowa Inheritance Tax Appraisers for Benton County, Iowa, said appraisal to take place for the purpose of fixing the price of the land within ninety (90) days after my death.

It is beyond significant dispute that Donald was attempting to allow Randall to purchase the land under favorable terms. First, the will gave Randall six years from the time of giving notice to enter into a land contract. During this period, Randall would be able to lease the land. Second, Donald stated the down payment for the land contract was to be *no greater* than twenty percent of the total price of the land. Third, the balance of the contract was to be paid *in a minimum of ten years*. Even more significantly, the will provided no upper limit on the number of years in which Randall was to pay off the balance of the contract. Fourth, the unpaid balance was to draw a favorable interest rate below what was being charged by the Feder-

al Land Bank Association. Finally, the selling price of the farmland was to be set at sixty-five percent of the appraised value.

■■■ The testator's intent is the polestar. *In re Estate of Anderson,* 359 N.W.2d 479, 480 (Iowa 1984); *In re Estate of Christensen,* 461 N.W.2d 469, 470 (Iowa App.1990). The primary goal in interpreting a will is to discern the intent of the testator. *In re Estate of Thompson,* 511 N.W.2d 374, 377 (Iowa 1994); *In re Estate of Hoagland,* 203 N.W.2d 577, 580 (Iowa 1973). This intent is determined by the language used in the will, the scheme of distribution, the circumstances surrounding the will's execution, and the existing facts. *Thompson,* 511 N.W.2d at 377; *In re Estate of Rogers,* 473 N.W.2d 36, 39 (Iowa 1991). The question is not what the testator meant to say but what the testator meant by what he or she did say. *Rogers,* 473 N.W.2d at 39. We consider the entire will and strive to give each part meaning and effect. *Id.*

The testator's intent is clear. The testator fixed the method to compute the sale price and the interest on the unpaid balances. He left open, however, what the amount of the down payment should be and the number of years Randall was to have in paying the unpaid balance.

It is equally clear the testator did not intend, when formulating the contract, the outside parameters were to be strictly adhered to. Rather, the testator intended that Randall should be able to purchase the land under terms which not only favored Randall, but also were to be such that Randall could financially abide by them. We do not believe the terms of the contract fixed by the trial court meet the testator's intent.

■■ We therefore reverse and modify that part of the district court's ruling that relates to the terms of the contract, but only in the following respects: (a) Randall is to pay ten percent down, or $65,604, instead of twenty percent, and (b) the balance of the purchase price of $590,441 is to be paid in twenty equal annual payments of $29,522. Interest on the unpaid balance shall be as directed by the trial court. We remand to the trial court to determine possession date. After that date

is determined, the first annual payment is to be made on March first following, and on March first of each year thereafter. Each of the other directions of the trial court as to the terms of the contract are approved.

### III. *Distribution of Personal Property.*

Randall, during the course of the probate proceedings, distributed to himself the farm machinery, farm tools, and automobile bequeathed to him under Donald's will. The will additionally required the payment of debts, claims, and taxes from the personal property of the estate.[5] Such distribution was an issue on appeal in *Ohrt I.* There, the supreme court ruled that such distribution violated the terms of the will for the will required all expenses, debts, and claims[6] were to be paid from the personal property of the estate before any distribution of said property was made. *See Ohrt I*, 516 N.W.2d at 900. The supreme court's ruling on this issue is as follows:

> Article II then specifically bequeaths all farm machinery, equipment and tools to Randall along with one car. Based on these two provisions, the sisters argue the specific bequests to Randall must be sold to satisfy debts of the estate. The district court believed ample funds existed in the estate to pay all debts, claims and taxes so

that it was unnecessary to abate any specific bequests.

Randall, acting as executor, distributed the machinery, tools, etc., and car to himself. He uses the farm equipment to farm the option property, which he currently rents from the estate. He has been depreciating the property since June of 1990. He sold the car to his son on contract.

We think Randall's distribution of this personal property to himself violated the terms of the will. *Nolte v. Nolte*, 247 Iowa 868, 877–78, 76 N.W.2d 881, 887 (1956) (special bequest made subject to payment of debts must be used to satisfy them). Insofar as it approved this distribution, the trial court decree must be reversed. Upon remand the trial court will order Randall to either: (1) reimburse the estate for the appraised value of any personal property distributed to him as may be necessary to satisfy estate debts; or (2) reclaim distributed assets (the distribution of which has been challenged on this basis) for the estate and arrange for their sale to satisfy estate debts.

*Ohrt I*, 516 N.W.2d at 900. This ruling is clear and unambiguous and, of course, constitutes the law of the case and governs the result which we must reach.

---

5. Donald's will provides in essential part:
   ARTICLE I.
   I direct that the expenses of my last illness and funeral be paid out of my estate, and that all debts and claims filed against my estate and all federal estate taxes and state inheritance taxes shall be paid from the personal property of my estate before any distribution of said property be made as hereinafter provided, and that the payment of said expenses and taxes shall not be charged against the respective beneficiaries and my Executors shall not seek reimbursement from any beneficiary for the payment of said items.
   ARTICLE II.
   I hereby give and bequeath to my son, Randall Ohrt, all of my farm machinery and equipment, all farm tools and my automobile.
   ARTICLE III.
   I hereby give and bequeath all of my household goods unto Randall Ohrt, and I hereby request that he distribute those household goods among my children, as he in his discretion deems proper.
   Articles IV, V, and VI were specific bequests of $1000 each to Linda, Sandra, and the Christian

Church of Vinton. Article VII bequeathed the residue of his estate in equal shares to his three children and gave Randall the option previously discussed. Article VIII named Randall and Merchants National Bank as co-executors. (As it relates to this article, we assume Merchants National Bank declined to serve for the estate's report and inventory notes Randall as the sole executor.)

6. The supreme court also noted:
   According to the estate's federal tax return, no federal taxes were owing and debts totaled $584,460. This amount included $6199 in funeral expenses, $68,075 in Donald's personal debts and $511,186 in mortgages and liens on real property of the estate. Personal property, excluding the specific bequests to Randall, totaled approximately $144,992 at the time of death. This amount also excludes Randall's rental and contract payments, under his option, to the estate. The approximate value of the specific bequest to Randall at issue was $96,725.
   *Ohrt I*, 516 N.W.2d at 900 n. 2.

Randall's choices, on remand, were to "either: (1) reimburse the estate for the appraised value of any personal property distributed to him as may be necessary to satisfy estate debts; or (2) reclaim distributed assets (the distribution of which has been challenged on this basis) for the estate and arrange for their sale to satisfy estate debts." *Id.*

The district court found the parties agreed the second option, as set out by the supreme court in *Ohrt I,* was not appropriate since Randall had been depreciating the machinery and much of the machinery had been traded. Thus, the district court concluded Randall should reimburse the estate for the appraised value of the property. It held that Randall was required to pay the estate the sum of $96,725 within ninety days of the date of the ruling as reimbursement for the appraised value of personal property distributed to him. It is at this juncture Randall claims error for he asserts that before the reimbursement amount can be calculated, a determination must first be made as to the dollar amount of assets available to satisfy the estate debts, claims, and taxes, and the amount of those debts, claims, and taxes.

Countering Randall's argument, appellees contend the trial court's ruling was correct for it is consistent with the language employed by the supreme court in *Ohrt I.* We disagree. The amount Randall is to pay is only that amount "as may be necessary to satisfy estate debts." Until that amount is fixed, the amount Randall is to reimburse cannot be determined. We, therefore, remand this case with instructions that a deter-mination be made as to the assets available to satisfy the estate debts, claims, and taxes, and the amount of those debts, claims, and taxes. The difference in these two amounts, if any, is the amount the supreme court directed Randall to reimburse the estate.

**IV. *Interest.*** Linda and Sandra raise an issue on cross-appeal regarding whether the district court erred in not requiring Randall to pay interest on personal property he distributed to himself. "When a case is retried under a rule that we dictate on appeal, that rule becomes the law of the case." *Hillrichs v. Avco Corp.,* 514 N.W.2d 94, 101 (Iowa 1994). "The district court on remand, and this court on appeal, are bound by the rule announced in [the first appeal]." *Notelzah, Inc. v. Destival,* 537 N.W.2d 687, 690 (Iowa 1995). The supreme court's ruling as it relates to the personal property in question did not provide for interest. That constitutes the law of this case. Interest cannot be argued. We believe claim preclusion also applies, but because of the result reached, we need not address its application.

As an aside, and if the question of abatement should arise, we direct to counsel's attention Iowa Code section 633.436 (1993).

**REVERSED AND REMANDED ON APPEAL; CROSS–APPEAL DISMISSED.**