# IN THE COURT OF APPEALS OF IOWA

No. 14-0871
Filed March 25, 2015

**ANGELA SHAW, f/k/a ANGELA HUGO,**
        Plaintiff-Appellee,

**vs.**

**SUSAN OSTRANDER,**
        Defendant-Appellant,

and JAYNE ANN MILLER,
        Defendant.
_____

        Appeal from the Iowa District Court for Winnebago County, Gregg R.

Rosenbladt, Judge.


        Susan Ostrander appeals the district court's order on a petition for

declaratory judgment concerning the parties' family settlement agreement.

**AFFIRMED.**


        Shaun Thompson of Newman Law Office, P.C., Forest City, for appellant.

        Joel J. Yunek of Yunek Law Firm, P.L.C., Mason City, for appellee.

        Jayne Miller, Derby, defendant pro se.


        Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

Susan Ostrander appeals a district court decision interpreting a family settlement agreement to give her sister, Angela Shaw, a first option to purchase farmland. We agree with the district court's conclusion that the language of the family settlement agreement is "very clear and unambiguous," that Shaw may purchase the land either by an installment contract or by cash purchase. We also agree with the court's finding that Shaw clearly exercised her option. We affirm the decision of the district court.

## I.     Background Facts & Proceedings

Russell and Martha Reindal had three daughters—Susan Ostrander, Angela Shaw, and Jayne Ann Miller. In 1992, Russell and Martha transferred by warranty deed their farmland in Winnebago County to their three daughters as tenants in common but retained a life estate to themselves. At the same time they entered into a family settlement agreement that was signed by Russell, Martha, Ostrander, Shaw, Miller, and the husbands of the three daughters.[1]

The family settlement agreement provided:

> WHEREAS, it is the desire of all parties that Angela [Shaw] shall have the first option to purchase said real estate in the event of the death of her parents or upon the death of the survivor of them; and
> WHEREAS, the parties desire to set out their terms of their understanding in writing,
> IT IS AGREED AS FOLLOWS:
> 1.     It is agreed that in the event that the valuation of said farm at the death of both of the Grantors first above named is equal to or similar to the fair market value at the time of the execution of this agreement, that the purchase price shall be the fair market

---

[1] When the family settlement agreement was signed Shaw was married to Doug Hugo and was known as Angela Hugo. She is no longer married to Doug Hugo and is now known as Angela Shaw.

value and Angela [Shaw], in the event that she elects to purchase said property, shall pay her sisters one-third each of the then fair market value of the property. It is agreed that she shall have the right to purchase the same on a real estate contract, calling for an initial down payment of ten (10) percent of the purchase price, with installments equal to five (5) percent of the purchase price to be paid each year for a period of seven (7) years, plus interest on the unpaid balances at the rate of six (6) percent per annum, with a balloon payment to be paid at the end of seven years from the effective purchase date.

2. In the event that there is a substantial increase in the fair market value of real estate, specifically in the event that the real estate should be valued in excess of $1,400.00 per acre, it is agreed that Angela [Shaw] shall have the same option to purchase as set forth in the foregoing paragraph, except that the purchase price shall be reduced to an amount equal to 75% of fair market value provided that the purchase price shall not be less than $1,400.00 per acre, on the same contractual terms set forth.

. . . .

4. All terms, proration of taxes and other matters shall be in accordance with standard format and custom in the prevailing area.

Russell died on July 8, 2001, and Martha died on October 7, 2012. At the time of the latter death, the fair market value of the farmland was in excess of $1400 per acre. On October 25, 2012, Shaw sent out a letter stating she definitely wanted to exercise her option to purchase the farmland. The letter also stated Shaw did not intend to purchase the property on an installment real estate contract but would submit a bank draft in full payment of the purchase price. Shaw obtained an appraisal valuing the property at $1,716,040.

Ostrander objected, claiming that under the terms of the family settlement agreement Shaw was required to purchase the property through a real estate contract payable over seven years. Ostrander obtained an appraisal valuing the property at $1,949,318.

Shaw filed a petition for declaratory judgment on May 23, 2013, asking the court to determine whether under the terms of the family settlement agreement she could purchase the property either by an installment contract or by a cash sale. She also asked the court to determine the fair market value of the property. A hearing on the matter was held on March 27, 2014.[2]

The district court ruled the language of the family settlement agreement was "very clear and unambiguous." The court determined that because the value of the farmland had substantially increased Shaw had the first option to purchase the farmland at seventy-five percent of the fair market value. The court found she had "the 'right' to purchase the property on a contract for deed, but is certainly not required to do so." The court also found Shaw had clearly exercised her option to purchase. The court concluded the fair market value for the property was the average of the two appraisals, $1,832,679.[3]

Ostrander filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asserting the family settlement agreement clearly and unambiguously required Shaw to purchase the property by means of an installment contract over a term of seven years and not a cash purchase. The district court noted Ostrander was asserting the family settlement agreement was clear and unambiguous, but the court did not change its conclusions concerning the meaning of the agreement. Ostrander appeals the decision of the district court.

---

[2] Ostrander filed a petition to partition the property pursuant to Iowa Rule of Civil Procedure 1.1201, and that matter was considered at the same hearing. The district court dismissed the partition action. No issues relative to the partition action have been raised on appeal.

[3] The court found Shaw's purchase price for the property was seventy-five percent of $1,832,679, which was $1,374,509. Because each of the three sisters had a one-third interest in the property, Shaw could purchase the property by paying each of her two sisters, Ostrander and Miller, $458,169.73.

## II. Standard of Review

"We generally review the interpretation and construction of a contract as a matter of law. However, our review here is de novo as the parties agreed to try the case in equity." *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 32 (Iowa Ct. App. 2000) (citation omitted); *see also In re Estate of Serovy*, 711 N.W.2d 290, 295 (Iowa 2006) (engaging in de novo review of the district court's interpretation of a contract in equitable proceedings). This case was tried in equity, and therefore, our review is de novo. Iowa R. App. P. 6.907. We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by those findings. Iowa R. App. P. 6.904(3)(g); *Weinhold v. Wolff*, 555 N.W.2d 454, 458 (Iowa 1996).

## III. Family Settlement Agreement

Ostrander contends the clear terms of the family settlement agreement require Shaw to purchase the farmland through an installment contract. The parties agreed there had been a substantial increase in the fair market value of the real estate and that paragraph 2 of the Agreement would provide the terms for Shaw's option to purchase the property. Under paragraph 2, Shaw could purchase the property for seventy-five percent of the fair market value "on the same contractual terms above set forth." Under paragraph 1, Shaw has the right to purchase the property on a real estate contract with a down payment of ten percent of the purchase price, with annual payments of five percent of the purchase price for seven years, plus interest at six percent per year, with a balloon payment at the end of seven years. Ostrander claims Shaw can

purchase the farmland only by a real estate contract that contains these specific terms.

The construction and interpretation of contracts are issues for the court to determine. *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995).

> Interpretation is the process for determining the meaning of the words used by the parties in a contract. Interpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence. On the other hand, construction of a contract is the process the court uses to determine the legal effect of the words used.

*Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435-36 (Iowa 2008) (citations omitted).

"It is the cardinal principle of contract construction that the parties' intent controls; and except in cases of ambiguity, this is determined by what the contract itself says." *Berryhill v. Hatt*, 428 N.W.2d 647, 654 (Iowa 1988). "Ambiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper." *Id.* The mere fact the parties disagree on the meaning of a phrase does not establish ambiguity. *Farm Bureau Mut. Ins. Co. v. Sandbulte*, 302 N.W.2d 104, 108 (Iowa 1981). When the parties' intent is clear and unambiguous, a contract should be enforced as it is written. *See American Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998).

We agree with the district court's conclusion that the language of the family settlement agreement is "very clear and unambiguous." The agreement

provides, "It is agreed that she shall have the *right* to purchase the [property] on a real estate contract." (Emphasis added.) The language of the Agreement, however, does not create an obligation that would require her to purchase the property by means of an installment contract. The district court properly determined Shaw "has the 'right' to purchase the property on a contract for deed, but is certainly not required to do so." *See In re Estate of Ohrt*, 550 N.W.2d 181, 184 (Iowa Ct. App. 1996) (noting that in a parent's will giving a child the right to purchase farmland, the testator intended for the child to purchase the land under terms favorable to the child).

### IV. Exercise of Option to Purchase

Ostrander claims Shaw did not properly exercise her first option to purchase the property. She asserts that under the family settlement agreement Shaw could only exercise her option to purchase by expressing a desire to purchase the property with a real estate contract. Ostrander states Shaw's expression that she wanted to make a cash purchase of the property did not constitute an exercise of the option under the terms of the agreement.

"The only rule regarding the manner of exercise of an option is to discover from the language of the instrument the intent of the parties with reference thereto." *In re Estate of Claussen*, 482 N.W.2d 381, 384 (Iowa 1992). "Anything amounting to an unqualified manifestation of an optionee's determination to accept is sufficient unless the option agreement provides otherwise." *Steele v. Northup*, 143 N.W.2d 302, 306 (Iowa 1966).

We agree with the district court's finding that Shaw clearly exercised her option to purchase the property. The letter sent to Ostrander and Miller on

October 25, 2012, stated Shaw "definitely wants to exercise this option to purchase." The family settlement agreement does not specify any particular method of exercising the option to purchase. As noted above, the agreement does not require Shaw to purchase the property with a real estate contract.

We affirm the decision of the district court.

**AFFIRMED.**